COMMERCIAL BANK OF AUGUSTA v. SANDFORD et al.

(Circuit Court, D. South Carolina. June 12, 1900.)

1. TAXATION—CONSTRUCTION OF STATUTES.
   Statutes imposing taxes are to be strictly construed, contrary to the rule applicable to remedial statutes, and the powers granted to officers thereby must be strictly executed.

2. SCHOOL DISTRICTS—MODE OF LEVYING TAXES—SOUTH CAROLINA STATUTES.
   Act S. C. Dec. 24, 1888 (20 St. at Large, p. 49), amended and re-enacted in 1893 (21 St. at Large, p. 402), which relates to school districts, and, among other things, requires the presentation of a petition to authorize the levy of a special tax in a district, and which further provides that it "shall not interfere with any school district which has heretofore been created by special act," being a general statute, does not affect the powers of a district subsequently created by a special act, which itself prescribes the procedure for the levy of a special tax in such district; and a tax levied in the manner so prescribed is valid, although no petition therefor was presented.

3. TAXATION—VALIDITY OF TAX SALE—ACTS OF OFFICER DE FACTO.
   A sale of lands in South Carolina under a tax execution directed to a sheriff is not unlawful because made by a person who acts as a deputy,

with the approval of the sheriff, although his appointment as deputy has not been confirmed by the judge of the circuit court, as required by statute, but his acts are valid as those of an officer de facto.

4. SAME—STATUTORY LIMITATIONS—SALE OF EXCESSIVE QUANTITY OF LAND.

Under the statute of South Carolina (Rev. St. § 347) providing that a sheriff having a tax warrant for collection shall seize and sell so much of the property of the delinquent taxpayer "as may be necessary to raise the sum of money therein named and charges thereon," the limitation is mandatory, and a sale of a tract of land worth $2,500, and readily capable of division, to satisfy a tax warrant calling for only about $30, is unauthorized, and voidable by the landowner.

5. MORTGAGES—RIGHT OF MORTGAGEE TO ACCOUNTING FOR RENTS.

A mortgagee of land cannot require a purchaser of such land at tax sale to account for rents received while in possession under his tax deed.

6. EQUITY—DECREE BETWEEN CO-DEFENDANTS—NECESSITY OF CROSS BILL.

A defendant cannot have a decree against a co-defendant without a cross bill with proper prayer and process or answer, as in an original suit.

In Equity. Suit to foreclose a mortgage, and incidentally to cancel a tax deed to the mortgaged property.

J. R. Lamar, for complainants.

Messrs. Henderson, for defendant Mary E. Sandford.

B. T. Rice, for other defendants.

SIMONTON, Circuit Judge. In this case, the defendants, other than Mrs. Sandford had interposed demurrers. The demurrers were heard and overruled, with leave to defendants to plead or answer as they were advised. 99 Fed. 154. All of the defendants have answered. Mrs. Julia B. Easterling, one of the defendants who had demurred, now disclaims. She produces in evidence her deed, executed 26th September, 1898, and duly recorded 12th December, 1898, whereby she conveyed in fee all her interest and estate in this land to E. R. Easterling, for $500. The cause, being at issue, was referred to a special master to report the testimony. His report has been filed, and a full hearing has been had. The bill is filed for the foreclosure of a mortgage executed by Mrs. Mary E. Sandford to the Commercial Bank of Augusta on 7th May, 1896, to secure the sum of $2,500. This mortgage was duly recorded in the proper office on 11th May, 1896. The debt bears interest at the rate of 8 per cent. per annum. The principal sum, with interest from the 4th November, 1897, is due and unpaid. The contract provides for the payment of the debt and interest, and commissions of 10 per cent. if the claim be put in the hands of an attorney for collection. As against Mrs. Sandford, the complainant is entitled to a decree for $2,500, with interest at the rate of 8 per cent. per annum on the principal sum, and for 10 per cent. additional on the amount due as commissions, and, in default of payment, to a decree for foreclosure and sale. The only litigated questions are between complainant and the other defendants. After the execution and record of the mortgage, a tax was levied in Elko graded school district, in which this land lies, for the purposes of a graded school. Mrs. Sandford having failed to pay any tax on this land for the fiscal year beginning January 1, 1897, a tax execution was issued against her for all state and county taxes and for this school tax for Elko graded school

district, and was levied on said land. The entire tax was $19.70. The entire execution, being penalty, costs, and commissions, aggregated, with the tax, $31.10. The whole tract was levied upon, and in due course offered for sale on first Monday of August, 1898, and was purchased by H. S. Mellichamp, J. B. Easterling, and E. R. Easterling for $85, and a conveyance made of said land to them as tenants in common. On 26th September, 1898, Mrs. Julia B. Easterling, by deed, conveyed her interest in fee to E. R. Easterling for the sum of $500. At the date of the levy and at the time of the sale, the lands were under rent to Layton McDonald, and, when the rent became due, he paid the sum stipulated to the clerk of the court of common pleas for Barnwell county, to abide the result of this case. The amount so deposited is $240.63. The land, after said purchase by Mellichamp and the Easterlings, was rented for the year 1899 for 10 bales of cotton.

The vital questions in this case are the validity of the school tax, the validity of the levy under the tax execution, and the validity of the sale, and of the conveyance made thereunder. It must be borne in mind that the legislation now under discussion is not remedial legislation. In all such cases, courts labor to arrive at the beneficial intent of the legislature, and seek to secure it full effect. Com. v. Kimball, 24 Pick. 370, and cases collected in 23 Am. & Eng. Enc. Law, 309, 362, and 24 Am. & Eng. Enc. Law, 358. We are construing statutes imposing taxes and burdens on the taxpayer. In all such cases the rule is changed. "The highest power that a sovereign— the lawmaking power—can confer is the power to tax. Every act conferring that power must express it plainly, and the act so expressing it must be strictly construed." Suth. St. Const. 459.

In every case of doubt, such a statute is construed against the government. U. S. v. Wigglesworth, 2 Story, 369, Fed. Cas. No. 16,690. Lord Cairns, in Partington v. Atty. Gen., L. R. 4 H. L. 100, 122, says:

"As I understand the principle of all fiscal legislation, it is this: If the person sought to be taxed comes within the letter of the law, he must be taxed, however great the hardship may appear to the judicial mind to be. On the other hand, if the crown, seeking to recover the tax, cannot bring the subject within the letter of the law, the subject is free, however apparently within the spirit of the law the case might otherwise appear to be. In other words, if there be admissible in any statute what is called an equitable construction, certainly such a construction is not admissible in a taxing statute, when you can simply adhere to the words of the statute."

See, also, Twine Co. v. Worthington, 141 U. S. 474, 12 Sup. Ct. 55, 35 L. Ed. 821; Rice v. U. S., 4 C. C. A. 104, 53 Fed. 910. It is tersely put in the Reports of the supreme court of the United States:

"One who claims title under summary proceedings, when a special power has been executed, as a tax sale, must show every fact necessary to give jurisdiction and authority to the officer, and a strict and exact compliance with every requirement of the statute." Parker v. Overman, 18 How. 137, 15 L. Ed. 318; Williams v. Peyton, 4 Wheat. 77, 4 L. Ed. 518; McClung v. Ross, 5 Wheat. 116, 5 L. Ed. 46.

The validity of the tax: By an act approved 23d December, 1891, the general assembly created a new school district within the county of Barnwell, to be known as the "Elko Graded School District," and authorized the levy and collection of a local tax therein. 20 St.

at Large, p. 1234. The seventh section of the act dealt with the tax: "The said board of trustees, if they deem it expedient, shall on or before 15th of January, 1892, and on or before the same day in each succeeding year, call a meeting in said school district, of all the legal voters living in above named school district, and returning real or personal property therein." Public notice must be given of such meeting at least 10 days before it, by posting the same in three conspicuous places in said school district, and by publishing the same at least twice in the newspaper of the county having the largest circulation. This meeting decides what tax shall be levied. The chairman of the meeting shall, within one week thereafter, notify the chairman of the board of trustees and the county auditor of Barnwell county of the amount of the tax, and the auditor shall at once assess the same on all the real and personal property returned in the school district. In the present case, the meeting, after due advertisement, was held, and the tax was levied, and the auditor notified. There was no petition presented, praying such levy. Such a petition is required in the second section of "An act to provide for the establishment of separate school districts in the several cities, incorporated towns, and villages in this state, to authorize the levy and collection of special taxes therein, and to authorize the levy and collection of special taxes in the several school districts, now formed or to be hereafter formed outside of cities, incorporated towns, and villages," approved 24th December, 1888. 20 St. at Large, p. 49. This act was amended in certain small particulars in 1893, and, according to a custom prevailing in the South Carolina legislature, the whole act, as amended, was re-enacted. 21 St. at Large, p. 402. The first act was passed before, and the second was passed after, the date of the Elko graded school district act. Were it important, an interesting question would arise: Does the amending act speak as of its own date, or does it relate back to the date of the act amended? Both acts have this proviso in the third section: "Provided that this act shall not interfere with any school district which has heretofore been created by special act." If the amending act speaks from its own date, this proviso would in terms apply to the Elko district. If it relates back to the date of the amended act, it would not so apply. This, however, is not important. "A general act is not to be construed to repeal a previous particular act unless there is some express reference to the previous legislation on the subject, or unless there is a necessary inconsistency in the two acts, standing together." Ex parte Crow Dog, 109 U. S. 556, 3 Sup. Ct. 396, 27 L. Ed. 1030; South Carolina v. Stoll, 17 Wall. 429, 21 L. Ed. 659. The provisions of a special charter or a special authority derived from the legislature are not affected by general legislation on the subject. Cass Co. v. Gillett, 100 U. S. 585, 25 L. Ed. 585; Black, St. Const. 116 et seq.

The levy of this tax was valid. Was the levy of the tax execution valid? The execution was put into the hands of the sheriff, and by him given to one Smith, who levied on the land and conducted the sale. Smith was employed in the sheriff's office as a deputy, but his general appointment as deputy had never been confirmed by the judge,

nor was he specially deputized in writing to do these acts. The tax execution is directed to the sheriff or to his lawful deputy. By section 713, Rev. St. S. C., the sheriff is authorized to appoint one or more deputies, to be approved by the judge of the circuit court or any circuit judge presiding therein. Such appointment shall be evidenced by a certificate thereof, signed by the sheriff. But section 715 provides that the sheriff, without seeking the approval of the circuit judge, may appoint special deputies, as the exigency of his business may require, for the service of process in civil or criminal proceedings only, and for their conduct he shall be responsible. This section does not say that the appointment be in writing. Taking this in connection with the fact that this man Smith was de facto a deputy, and that his acts have been recognized by the sheriff, it would seem that the levy, although irregular it may be, was not unlawful. "The acts of an officer de facto, although his title may be bad, are valid so far as they concern the public or the rights of third persons." Ralls Co. v. Douglass, 105 U. S. 728, 26 L. Ed. 957.

Was the levy and sale invalid? The land was worth at least $2,500. The taxes, penalties, and costs were some $31 in all. The whole plantation was levied upon and sold, and brought $85. Section 347, Rev. St. S. C., provides when and how the tax execution should issue. It gives minutely the form of the execution. Its requirement is to levy the same by distress or sale of so much of the defaulting taxpayer's estate, real or personal, or both, as may be sufficient to satisfy the taxes, state, county, and special, of the defaulter. This language has no ambiguity. Only so much of the defaulter's estate as may be sufficient to pay the tax must be levied upon and sold. The language is mandatory. It is designed to protect the property holder. The purpose of the law is to secure the tax, not to confiscate the property of the citizen. Speaking upon this subject, Mr. Justice Field, in French v. Edwards, 13 Wall. 511, 20 L. Ed. 703, says:

"There are undoubtedly many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power, or render its exercise in disregard of the requisitions ineffectual. Such, generally, are regulations designed to secure order, system, and dispatch in proceedings, and by a disregard of which the right of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory, unless accompanied by negative words, importing that the acts required shall not be done in any other manner or time than that designated. But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory, but mandatory. They must be followed, or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise."

Clearly, the provisions of this South Carolina statute were made with this object, and they are mandatory. Judge Cooley adds the weight of his authority to this. In his work on Taxation, he says:

"Such a provision [that only so much of the land must be sold as would pay the tax] must be strictly obeyed. A sale of the whole, when less would pay the tax, would be such a fraud on the law as to render the sale voidable at the option of the landowner; and the deed would be void on its face if it showed the fact of such excessive sale." Page 496.

What, then, are the facts of this case? Was this body of land of such a character that it could not be divided into parts without destroying the value of the whole? The land on this tract is good, arable land. It lies about a mile from Elko, a town on the Southern Railway. The tract itself is on the railroad. Several witnesses who were examined gave it as their opinion that there were parcels of the. tract which could easily have been cut off and sold, and that they would have brought a sum of money largely in excess of the tax. The plat shows the small tracts indicated.

One tract marked "A," on the upper part of the plat, has 25 acres in it. All the witnesses say that it can be cut off from the land, and easily bring $100. Another, marked "B," on the lower side of the plat, separated from the main body of the land by a public road, contains 8 acres, has on it one or more tenant houses, and rents for a bale of cotton for the year. Its estimated value is over $100. In the opposite corner of the plat, on the railroad, is another piece of land, containing 8 or 10 acres, easily cut off from the tract, and worth $100 and upward. It is manifest that any one or all of these little parcels could have been sold, and could have paid the tax. Under these circumstances, the conclusion cannot be avoided that a levy on the land as a whole, valued by witnesses at $2,500 to $3,000, assessed for taxation at $1,433, having on it a comfortable dwelling house and several tenant houses, in order to pay a tax of $31, was an excessive levy. It

was a violation of the act, and, in the language of Judge Cooley, a fraud on the law. The sale made under these circumstances was invalid, and the conveyance executed by the sheriff to Mellichamp and the Easterlings is set aside as void.

The purchasers at the tax sale rented the land in 1899, and have it now under rent for 1900. They have received the rent for 1899. It is claimed that they must account for it. The complainant mortgagee has no right to such an account. "A mortgagee is not entitled to rents and profits of mortgaged premises until he takes actual posses- sion, even though he has the right to take possession on condition broken." Teal v. Walker, 111 U. S. 242, 4 Sup. Ct. 420, 28 L. Ed. 415. Nor can the mortgagor in these proceedings claim such an ac- count. She does not set up any such claim in her answer. Nor has she filed any cross bill praying relief against her co-defendant. "One defendant cannot have a decree against a co-defendant without a cross bill, with proper prayer and process or answer, as in an original suit." Daniell, Ch. Prac. (Perkins' 3d Am. from 3d Eng. Ed.) 1648. This renders any discussion unnecessary with regard to Mrs. Julia R. Easterling. She conveyed all her interest to E. R. Easterling a short time after the tax sale. A decree will be entered in conformity with this opinion.