## STATE v. LONDON & NORTHWEST AMERICAN MORTGAGE COMPANY.[1]

June 22, 1900.

Nos. 12,214—(263).

### Taxes—Credits Owned by Nonresident Corporation.

A nonresident owning credits in this state which are retained here in the hands of an agent to close up a loaning business may be required to list the same for taxation, and the situs of such property for taxation is the taxing locality where such agent has his office for the transaction of such business.

### Same—Insolvency of Corporation—Winding Up Business.

The fact that such nonresident becomes insolvent, and there is a change of agent, but there remains in the state a portion of such property while in the process of closing up such business, does not relieve such property from contributing its share to the common burdens of taxation.

### Same—Deductions for Debts—Procedure.

Deductions for indebtedness are authorized by the state constitution, but a statement of such indebtedness must be furnished to the assessor at the time the credits and loans are listed; and it is too late, after the board of equalization has acted upon the assessment, to raise the objection that such deductions have not been in fact made, where such statement was not so furnished.

### Same—G. S. 1894, §§ 1526, 1527.

The provisions of G. S. 1894, §§ 1526, 1527, which require claims for deductions for indebtedness to be made in the first instance to the assessor, as held in State v. Willard, 77 Minn. 190, are not in violation of sections 1 and 3, article 9, of our state constitution.

### Excessive Valuation—Reduction by Court.

Where the assessed valuation of personal property is so excessive as clearly to indicate unfairness and injustice, as shown by proof to the trial court upon review, such assessment should be reduced to the actual value of the property, which is a judicial question not controlled by the action of the assessor or board of equalization.

### Sp. Laws 1876, c. 212, § 5—Action by State Auditor.

Under the provisions of G. S. 1894, § 1652, no abatement of taxes under

[1] Reported in 83 N. W. 339.

the provisions of Sp. Laws 1876, c. 212, § 5 (applicable only to Ramsey county), is effective without the approval of the state auditor.

Proceeding in the district court for Ramsey county for collection of delinquent personal property taxes for 1898. The case was tried before Kelly, J., who made findings of fact, and as conclusion of law found that plaintiff was entitled to judgment for $6,349.86, being the amount of the tax on a valuation of $302,374.47. On application of defendant the court certified to the supreme court for its determination the points stated in the opinion. Modified.

*W. H. Yardley* and *F. B. Tiffany,* for defendant.

Defendant's credits, evidenced by notes secured by mortgages on real estate situate in Minnesota, were not personal property within the state for purposes of taxation, and were not assessable and taxable as such. As defendant was not a resident of this state, there was no jurisdiction over it. In matter of Jefferson, 35 Minn. 215; State v. Scottish-American Mort. Co., 76 Minn. 155. A credit, which cannot be regarded as situated in a place merely because the debtor resides there, is, as a rule, deemed to have its situs where it is owned, that is, at the domicile of the creditor. An exception, indeed, to this general rule has been recognized, to-wit: Where a nonresident creditor places his credit in the hands of a resident agent for collection or renewal, with a view to reloaning the money and keeping it invested as a permanent business, in such case the creditor is regarded as having given it a "business situs" within the state, and the credit is deemed to have its situs where and so long as it is so controlled,—that is, at the domicile of the agent. In matter of Jefferson, supra; State v. Scottish-American Mort. Co., supra. The mere fact that the notes and mortgages are or are not in the possession of the agent is immaterial in determining whether the credit has a "business situs," except in so far as the possession of the instruments might be an element in establishing the nature and extent of the control exercised by him. See Bristol v. Washington Co., infra. Hence credits, though evidenced by promissory notes and mortgages belonging to a nonresident, and in the hands of an agent in the state where the debtor resides for collection, do not thereby acquire a business situs, and are not liable to taxation

in the latter state. Myers v. Seaberger, 45 Oh. St. 232; Herron v. Keeran, 59 Ind. 472; City v. Armour (Miss.) 24 South. 224; Finch v. County, 19 Neb. 50.

The taxability of credits belonging to nonresidents has been before this court in City of St. Paul v. Merritt, 7 Minn. 198 (258); In matter of Jefferson, supra; State v. Scottish-American Mort. Co., supra. The decisions in these cases establish the following propositions: (1) Except for G. S. 1894, § 1515, subd. 2, requiring agents and attorneys to list personal property by them "invested, loaned, or otherwise controlled," and section 1516 providing that personal property shall be assessed "where the agent resides," there is no legislative authority for assessing or taxing credits belonging to nonresidents. (2) Credits belonging to nonresidents cannot be taxed in Minnesota unless they are in the hands of an agent or attorney whose duty it is to list them as personal property by him "invested, loaned, or otherwise controlled." These decisions also show the limits of the general rule, which exists independently of statute and declares that credits belonging to nonresidents are not properly within the state, and of the exception in the case of credits having a business situs; and show that the present case falls within the rule and not within the exception. The distinction between cases like the Jefferson case, where the agent is compelled to list credits controlled by him as a permanent investment, and cases like the Scottish-American Mortgage Co. case and the present case, where the agent's authority does not extend beyond collection, and he is hence not compelled to list them, is further illustrated by the following cases from other jurisdictions, in most of which the statutory provisions were substantially identical with those in force in Minnesota; and in which the principles declared in the Minnesota cases are affirmed. Myers v. Seaberger, supra; Walker v. Jack, 60 U. S. App. 124, 31 C. C. A. 462, 472, note (reversing Jack v. Walker, 79 Fed. 138), 96 Fed 578; Goldgart v. People, 106 Ill. 25; Finch v. County, supra; City v. Armour, supra; Bristol v. Washington Co., 177 U. S. 133. There is no continuance of a business situs of a credit irrespective of the control of the agent. In matter of Jefferson, supra; Goldgart v. People, supra; Myers v. Seaberger, supra. New Orleans v. Stemple, 175 U. S. 309, is not in point, since

it arose under statutes totally different from those of Minnesota, which expressly authorized the taxation of notes and mortgages when found in concrete form within the state.

Under G. S. 1894, §§ 1526, 1527, the owner of credits who fails to claim deduction on account of indebtedness when listing the credits with the assessor and in the manner therein provided, is not thereby precluded from thereafter making such claim, although no excuse for such failure be shown. G. S. 1894, §§ 1526, 1527, as construed by the trial court, are invalid, on the ground that they are in conflict with Const. art. 9, §§ 1, 3. "Credits," as used in the constitution, is the excess (if any) of the taxpayer's demands over his debts. State v. Moffett, 64 Minn. 292. If no such excess exists, no "credits" exist. Hence, if G. S. 1894, §§ 1526, 1527, authorize the assessor in such cases, whenever no claim for deduction was made as therein provided, to make an arbitrary assessment upon "credits," which shall be final, then these sections authorize the taxation of property which does not exist. See McCormick v. Fitch, 14 Minn. 185 (252).

In all cases of arbitrary assessment the taxpayer has, at least, the right to appear before the proper board of equalization, and if it be shown that the excess in the assessor's valuation was so gross that it cannot be accounted for on any ground of mere bona fide misjudgment of value, but must have resulted from fraud, or from demonstrable mistake of fact or of law, or that his valuation did not express any bona fide estimate or opinion on his part as to the value of the property, the assessment must be reduced by the board to such sum as in its bona fide judgment is the true value; and if the board refuses so to do, it is the duty of the district court to pass upon the question and to reduce the assessment when the facts are made to appear upon answer to the citation. County of Otter Tail v. Batchelder, 47 Minn. 512; State v. William Deering & Co., 56 Minn. 24. See also State v. Board of Public Works, 27 Minn. 442; State v. District Court, 29 Minn. 62. Failure to list does not deprive the owner of the right to apply for a correction of the assessment to the board of equalization. Thompson v. Tinkcom, 15 Minn. 226 (295). To sustain an assessment on "totally worthless" credits would be practically confiscation; and this portion at least of the credits did not exist in any sense that would make it the

duty of the owner to list them or that could lawfully make them the subject of taxation. Exchange v. Hines, 3 Oh. St. 1. G. S. 1894, § 1536, in so far as it attempts to compel the valuation of absolutely valueless credits at their face value, or of credits at their face value when it exceeds their true value, is in conflict with Const. art. 9, § 3. McCurdy v. Prugh, 59 Oh. St. 465.

Defendant was entitled to the benefit of the abatement of city and county taxes granted by the board of abatement. There is nothing in the language of G. S. 1894, § 1652, which repeals the provisions of Sp. Laws 1876, c. 212, § 5.

*W. B. Douglas, Horace E. Bigelow* and *F. W. Zollman*, for plaintiff.

LOVELY, J.

This is a proceeding to enforce personal property taxes in the city of St. Paul, certified to this court under G. S. 1894, § 1589, for its opinion upon the questions presented.

The defendant was a foreign corporation having its principal office in London, and engaged extensively in making loans in this state, particularly in St. Paul, until 1893, when it became insolvent, ceased loaning money, and went into liquidation. Through the succeeding years until 1898 plans for reorganization were considered, but did not eventuate in success. The former agents of the company were discharged, and, under the approval of the English courts, new ones were appointed, who had no powers other than to collect its obligations, sell its real estate, protect its foreclosures, and such duties generally as were necessary to take care of its avails in this country, for the purpose of returning the same with best results to the home office in London. Such agents, since 1893, were not permitted to make any new loans save for the protection of investments already made. Up to May, 1898, the defendant had paid no other taxes than upon its office furniture and fixtures in St. Paul.

Of the date of May 1 of that year it was assessed in Ramsey county for personal property in the sum of $1,000,500, being $1,000,000 for its credits and $500 for its office furniture. No objection was made before the assessor to such assessment; neither was he requested, on behalf of the defendant, to make any deductions for

indebtedness, although there was at such time a large outstanding liability of the corporation exceeding in amount the real assets of the concern. The assessor, without interference or suggestion from any one in behalf of defendant, made his return as above stated to the county auditor. Afterwards counsel for defendant appeared before the county board of equalization, and objected to such assessment upon the ground that the defendant did not own any personal property save its office furniture that was subject to taxation, and requested the board to cancel the assessment returned, and to reduce its aggregate valuation to the sum of $500. The board of equalization refused to interfere, and denied the application. A levy was then duly made upon the assessment as returned by the proper officers, when defendant applied to the persons designated in Sp. Laws 1876, c. 212, § 5, to have the taxes so levied abated, upon a claim practically the same as previously made to the board of equalization. The board provided for in the act referred to (consisting of certain persons appointed under such act by the common council of St. Paul) proceeded to hear such matter, and made an order abating the taxes upon property of defendant excepting $500 (office furniture) and the taxes due to the state. The state auditor declined to sanction this reduction, and has never approved the same.

The taxes were not paid, whereupon a citation from the district court under G. S. 1894, § 1569, was duly issued to defendant to show cause why the taxes so assessed and levied should not be paid. Defendant appeared, and the whole issue was tried before the district court, who returned findings of fact and conclusions of law holding defendant liable for taxes upon $301,874.47, and certifying five specific questions to this court for its determination. The issues thus submitted may be briefly summarized as follows:

(1) Had the defendant's credits a business situs in Ramsey county that justified the assessment of the same, notwithstanding its insolvency, and suspension of its loaning and investment business?

(2) Was defendant entitled to have the district court deduct from the assessment returned the amount of its indebtedness, according to the facts, or had such right been waived?

(3) Assuming that the provisions of our statute, G. S. 1894, §§

1526, 1527, require that at the time of listing credits the claim for indebtedness, to be of avail, must be made to the assessor, are such provisions in conflict with sections 1 and 3, article 9, of the state constitution?

(4) The court having found that the assessment of $1,000,000 for credits was too large, that the face value of defendant's credits was only $301,874.47, and that the real value of the same was much less, was the defendant entitled to have the same reduced by the court to correspond with the actual value thereof?

(5) Was defendant entitled to have the taxes further reduced by the court by reason of the action of the board of abatement pursuant to Sp. Laws 1876, c. 212, § 5? We shall answer these questions in their order.

1. We do not think it is any longer an open question in this state that money demands, notes, mortgages, and other evidences of indebtedness or of money loaned, and kept for investment here, have an actual business situs in this state. In matter of Jefferson, 35 Minn. 215, 28 N. W. 256; State v. Willard, 77 Minn. 190, 79 N. W. 829. Nor do we think that the insolvency of the defendant affects its liability to bear its proper share of the legal burdens of taxation. Its financial condition may, in practice, affect relatively, but cannot absolve wholly from, this obligation. The real question is whether at the time personal property is subject to taxation it is in the state, in the hands of an agent, who retains its possession, and deals with it here in his representative character for his principal; and this whether the owner is solvent or insolvent; whether new loans are made, or the business is in fact being closed up with the intent to remove from the state as soon as it is convenient to do so. State v. Scottish-American Mort. Co., 76 Minn. 155, 78 N. W. 962; McCutchen v. Rice Co., 2 McCrary, 337, 7 Fed. 558; New Orleans v. Stemple, 175 U. S. 309; Bristol v. Washington Co., 177 U. S. 133.

2. We adhere to the former rule of this court that, where a claim is interposed or relied upon for deductions on account of indebtedness to be set off against the value of personal property, the claims for such deductions under G. S. 1894, §§ 1526, 1527, "should be made when listing credits with the assessor, and cannot be made

at any other time or in any other manner." State v. Willard, supra.

3. We do not think the provisions of sections 1526, 1527, above referred to, as thus adopted, are repugnant to sections 1 and 3, article 9, of our state constitution. While the statutory right to deduct indebtedness from credits is constitutional (State v. Moffett, 64 Minn. 292, 67 N. W. 68), yet obviously the right to such deduction can be secured only in the manner provided by law. If deduction from credits on account of existing indebtedness is secured anywhere, it is under the statutory provisions referred to. These provisions prescribe a method of procedure to accomplish the desired result in a practicable way. They are not denied, and the interested party desiring the benefit of such deduction can easily secure it by complying with a very simple process consistent with honesty and good business methods. We have no doubt of the power of the legislature to prescribe the method of procedure in such cases, and the law as interpreted by State v. Willard, supra, indicates a proper and appropriate course to accomplish that end.

4. It appears that the defendant was assessed in the sum of $1,000,000, the estimated value of its credits then subject to taxation in Ramsey county. The defendant did not list any credits with the assessor, or make any claim for deductions thereon, but afterwards appeared before the board of equalization, and denied that it had any property subject to taxation. Upon the hearing before the district court the evidence disclosed the fact that the face value of the notes and mortgages then under the control of defendant's agents in St. Paul was $301,874.47; that of this sum $73,760.73 were wholly worthless, and that of another portion— $195,825.35—the true value did not exceed $30,000. In other words, that the true value of the property in the city of St. Paul, which the assessor had estimated at $1,000,000, was $62,288.39; and was so found by the court, who reduced the assessor's valuation to the face value of the credits, viz. $301,874.47, but declined to make a further reduction upon the theory that it was the duty of the assessor, rather than of the court, to estimate valuations. We are unable to agree with the learned trial court in this conclusion.

We concur in the view that a reduction should have been made, but the reduction was not sufficient, and we are not satisfied with the reasoning of the court in this respect. If articles of personal property are assessed, and their valuations fixed by the assessor within the range of reason and justice, such estimated values would be entitled to great respect; but the theory of the trial court that, even if the assessor had assessed an article of personal property at what is apparently ten times its actual value, it cannot be reduced by the court, is unsound. We have no doubt that such excessive valuation, in violation of reason, justice, and common sense, would convict the assessment of such lack of the element of judgment as to require interference by the judicial power to correct it. As to notes and bills receivable, the reason for judicial interference is still stronger. Seventy-three thousand dollars, in round numbers, is a large sum. The court below found that bills receivable to this amount in one instance were wholly worthless; of no more value in fact than counterfeit money, or obligations upon which the statute of limitations had run. To say that because the assessor returns that sum, and the board passes such worthless stuff at its face value, the courts cannot correct the palpable injustice, shocks every sentiment of fair play, and leads to the inquiry whether a court can act at all in the premises to prevent the most arbitrary acts of confiscation. Whether we treat the constitutional declaration in section 3, article 9, that laws shall be passed "taxing   *   *   *   property according to its true value," as requiring legislation to effectuate it or not, it is clear that under this provision in our fundamental law—which is essential to justice and good government—any interpretation of our taxing statutes requiring an arbitrary assessment of property largely in excess of its known and admitted value to pass judicial inquiry would be a palpable violation of its true purposes and cannot be tolerated upon any principle of justice or equity. Upon this particular issue we adopt the view of the supreme court of Ohio holding

That "Choses in action are to be listed at their true value. If a note, for instance, is wholly worthless, it is not to be listed at all; if it is of some value, but less than its face, it is to be listed at what it is worth." Exchange v. Hines, 3 Oh. St. 1.

It is to be presumed, of course, that the assessor as well as the board of equalization will act fairly; and where, within the reasonable range of inquiry, there is latitude for a difference of estimations as to values, the court in such cases will not interfere with their conclusions; but when, as in this case, an assessment has been for an exorbitant amount, and it is apparent that no judgment at all has been exercised, it must be evident that either a demonstrable mistake of fact has occurred or a gross injustice has been intentionally perpetrated; and we hold in every such case the power of the court is sufficient to correct the wrong, and that it should not hesitate to do so. And we do not think that this duty of the courts to interfere in a proper case is a new question in this state; but we have already recognized the rights of our courts to maintain a substantial and effective corrective power over the valuations of both real and personal property, and to correct and modify improper assessments, even after the same have passed the board of equalization. County of Otter Tail v. Batchelder, 47 Minn. 512, 517, 50 N. W. 536; State v. William Deering & Co., 56 Minn. 24, 57 N. W. 313.

5. Sp. Laws 1876, c. 212, § 5, provides for the appointment of a board of four persons by the common council of St. Paul, who, with the mayor and county auditor, or a majority thereof, shall have certain powers to make abatements of taxes or penalties as they may deem just, or to order any taxes that have been assessed or paid by mistake to be refunded. Under this provision, after the county board of equalization had refused to strike out the assessment in this case, a further application was made to such city board of abatement by the defendant to be relieved from all taxes except state taxes, which application was granted, and an order made abating the same, and relieving the defendant from any liability in respect thereof, except from taxes due the state. This order was submitted to the state auditor, but was rejected by him, and he has never since approved the same. We are of the opinion that this statute must be construed in connection with the duties imposed by a more recent statute adopted by the legislature subsequent to the special laws referred to. G. S. 1894, § 1652, in reference to the same, provides that

"The auditor of state    *    *    *    shall hear and determine all matters of grievance relating to taxation on account of excessive valuation of property, or for other cause, when submitted to him. *    *    *    He shall decide all questions that may arise in reference to the true construction of this act, in accordance with the advice and opinion of the attorney general, and such decision shall have force and effect until annulled by the judgment or decree of a court of competent jurisdiction."

This is a general statute, making no exceptions, but covering all cases where abatements or reductions are desired and obtainable, and seems to be clearly applicable to the city of St. Paul, as well as all other parts of the state, making it necessary to have the approval of the state auditor before the action of the board provided for by the special act could become operative. As we have seen, the state auditor declined to approve the abatement, and his refusal to do so was fatal to the claim of defendant that the action of the board of abatement was effective to reduce the taxes.

For the reasons stated, the case is remanded to the district court, with directions to enter judgment for the taxes due upon the office furniture as well as the actual amount of credits under and within the control of the agents of the defendant in the city of St. Paul at the time of assessment, based upon their actual value as found by the trial court.