## STATE v. WESTERN UNION TELEGRAPH COMPANY.[1]

September 22, 1905.

Nos. 14,413—(27).

**Taxation—Valuation of Personal Property.**

The prima facie validity of an assessment of personal property for general taxation is not overcome by a well-grounded claim of overvaluation. Courts do not interfere therewith, except when tax officials have acted fraudulently or maliciously to the substantial prejudice of the taxpayer, or have made a mistake so gross as to be inconsistent with fair and honest judgment, or when they have proceeded on an erroneous rule of law, and then only upon sufficient proof addressed to proper legal standard of valuation.

**Cost Price.**

The cost price of the tangible property of a telegraph company, together with reasonable deduction for natural deterioration, is not a proper basis for valuation of such property for taxation on general lists.

**Construction of Statute.**

The language of a law providing for a constitutional method of taxation is to be construed fairly and reasonably, so as to effectuate legislative intention, and to compel property protected by the state to contribute its ratable share of public revenue, and to avoid discrimination in taxation between property owners.

**Taxation of Telegraph Companies.**

Laws 1891, p. 70, c. 8, amended by chapter 180, p. 251, Laws 1901, provides for the taxation of the tangible and intangible property of telegraph companies situated within this state as a system, and not merely for the taxation of items of tangible property only, and is constitutional. Adams Ex. Co. v. Ohio, 165 U. S. 194, on rehearing 166 U. S. 185, followed.

[1] Reported in 104 N. W. 567.

Action in the district court for Ramsey county, under chapter 8, p. 70, Laws 1891, and amendment, to recover from defendant $44,447.95 delinquent personal property taxes. The case was tried before Bunn, J., who found in favor of plaintiff for the sum of $1,499.70 and interest. From a judgment entered pursuant to the findings, plaintiff appealed. Reversed and remanded with instructions.

*Edward T. Young,* Attorney General, and *Charles W. Somerby,* for appellant.

*C. M. Ferguson,* for respondent.

JAGGARD, J.

The state of Minnesota brought suit against the Western Union Telegraph Company for taxes for the years 1899 and 1900, assessed by the state board of equalization. Those taxes were assessed and an action at law to recover them was instituted under chapter 180, p. 251, Laws 1901. The telegraph company previously to the year 1899 had been assessed upon a valuation of $865,500. In that year the board, after due notice to the company, raised the valuation of its property to $1,000,000. The Western Union refused to pay the tax based on that amount. It appeared from the return made in accordance with the said laws that the company owned and operated 19,164 miles of lines, with an average of 28 poles to the mile, and 627 stations in Minnesota during the year 1899, and 20,200 miles of lines, with the same average of poles per mile, and 670 stations in Minnesota in the year 1900. The trial court found that the admitted value of $600,000, as claimed by defendant's answer, was the true value for purpose of taxation for 1899, and that said value for 1900 was $665,294. As conclusions of law it found that the plaintiff was entitled to judgment in a sum based upon said valuations. An appeal was taken by the state from a judgment entered accordingly.

The conclusions of the trial court sustained the contentions of the telegraph company that under the law applying to the taxation of telegraph companies its tangible property only was to be assessed at a valuation to be determined in the same manner as that of other tangible property, namely, at its intrinsic worth, without the addition of any sum for supposed franchise or the like. Accordingly the record presents two questions, namely: First. Is this an instance of overvaluation

to such an extent as to require a court to abate the official assessments?' Second. Is this a case of an assessment made upon an illegal principle?

The principles involved in the first question as to overvaluation are as familiar as they are well settled. The original warrants of the state auditor are by statute expressly made prima facie evidence of the valuation therein contained. When they were produced by the state on trial, the burden of proof rested upon the telegraph company to affirmatively show sufficient basis for interference by the court with that valuation. State v. Wm. Deering & Co., 56 Minn. 24, 28, 57 N. W. 313. It is presumed, in the absence of evidence to the contrary, that public officials faithfully and legally performed their official duties, and that in making the assessment they proceeded upon sufficient and competent evidence to justify their action. La Salle v. Donoghue, 127 Ill. 27, 18 N. E. 827; State v. Savage, 65 Neb. 714, 91 N. W. 717, 721; Union R. T. Co. v. Lynch, 177 U. S. 149, 154, 20 Sup. Ct. 631. To overcome this prima facie validity of the assessment, the objector must show more than a well-grounded claim of overvaluation. Mere differences in opinions or theories as to values, as inevitable as they are inconclusive, are not sufficient. The determination of a board "cannot be overthrown by the testimony of two or three witnesses that their valuation was other than that fixed by the board." Justice Brewer, in Pittsburgh, C. & St. L. Ry. Co. v. Backus, 154 U. S. 421, 435, 14 Sup. Ct. 1114, 1120.

To require absolute correctness of assessment would be Utopian futility. On the contrary, it consists alike with good sense and good law to accept as practicable the approximation to equality in valuation made in the exercise of the judgment of those upon whom the state devolves the duty of appraisal. People v. Worthington, 21 Ill. 170, 172; Porter v. Rockford, 76 Ill. 576. Sovereign power of taxation enforced by ministerial officers in accordance with legislatve provisions is not judicial in character. Courts do not interfere with assessed valuations,. except when the taxing officials have acted fraudulently or maliciously,. to the substantial prejudice of the taxpayer, or have made a mistake so gross as to be inconsistent with the exercise of fair and honest judgment, or where they have proceeded upon an erroneous rule of law,. and then only upon sufficient proof addressed to proper legal standard!

of valuation. See Pittsburgh Ry. Co. v. Board of Public Works, 172 U. S. 32, 39, 19 Sup. Ct. 90; French v. Barber Asphalt Co., 181 U. S. 324, 21 Sup. Ct. 625; State v. District Court of Ramsey County, 95 Minn. 70, 103 N. W. 744; Pittsburgh C. & St. L. Ry. Co. v. Backus, supra; Maish v. Arizona, 164 U. S. 599, 610, 17 Sup. Ct. 193; Danforth v. Livingston, 23 Mont. 558, 59 Pac. 916; Keokuk v. People, 185 Ill. 276, 56 N. E. 1049; State v. Savage, 65 Neb. 714, 91 N. W. 716, 729, 730; State v. West Duluth Land Co., 75 Minn. 456, 78 N. W. 115. But, where property is valued at a sum so enormous as not to be within the range of reason or justice and common sense, the power of the court is sufficient, and should be exercised, to correct the wrong. State v. London & N. A. Mort. Co., 80 Minn. 277, 83 N. W. 339.

Measured by these rules, the testimony of the defendant wholly failed to entitle it to relief on the ground that its tangible property had been subjected to an illegally excessive valuation. That evidence was given by its local superintendent. He placed a valuation only on certain segregated items of tangible property within this state on the assessment day, towit, for the year 1899, $600,000; for the year 1900, $665,294. Upon cross-examination, he stated that, in determining such values of such property, and of each item, he took into consideration no element of value whatever, except, first, the cost price (apparently in Chicago); and, second, reasonable deductions therefrom for natural deteriorations. This witness had examined personally only between twenty-five and thirty per cent. of the total system, and had never seen all the lines of the company in Minnesota. He could not state accurately the proportion of wires at various prices in use in the state. His estimates were at best an approximation as to the length of time wires had been used and poles placed, and the extent to which the property had depreciated by use. This same witness had given a previous estimate of the value of the property in the sum of $458,541.50, based on what is generally understood to be the proportion of actual value on which other personal property is assessed in the state of Minnesota, to wit, fifty per cent. The full value of the property, on this estimate of the telegraph company's own expert, would have been $917,082. He also testified that the cost of replacing the property in Minnesota at that time was about $900,000.

The cost price (in Chicago) and natural wear and tear and deteriora-

tion do not constitute any reasonable basis for estimate of taxable value. In connection with testimony as to market value, or actual value, these items would doubtless be entitled to consideration. Here no such testimony was introduced, nor was there any evidence of fraud, misconduct, or mistake on the part of the board. The testimony referred to does not show an error of judgment, but, fairly construed, tends in a measure to confirm the official valuation of $1,000,000. The conclusion follows inevitably that, without considering the value of such property as a system, and without regard to taxable property omitted from the estimates of the telegraph company, the valuation contended for by it and sustained by the trial court, based as it is upon an improper legal theory and calculated upon uncertain estimates, does not furnish any sufficient foundation for interference by a court as the assessment of tangible property at an amount not necessarily inconsistent with a correct legal view of the objector's own testimony.

The second question presented by this record, and the more important one in principle, concerns the construction of the act in question with respect to its purpose to tax, not segregated items of tangible property, but to levy the tax upon tangible and intangible property united in use.

Chapter 8, p. 70, Laws 1891, as amended by chapter 180, p. 251, Laws 1901, to which reference has been made, imposes upon the telegraph companies the duty of filing a statement showing the following facts (1) The total number of miles owned, operated, or leased within the state, with a separate showing of the number leased; (2) the total number of telegraph stations on each separate line, and the total number of telegraphic instruments in use therein, together with the total number of stations mentioned; (3) the total number of miles in each separate line or division thereof, together with the total number of separate wires thereon, and stating the counties through which the same are carried; (4) the average number of telegraph poles per mile used in the construction and maintenance of said lines. It is further provided by said section 3 of said chapter 8

> That upon receipt of said statement  *  *  *  the auditor of the state shall lay the same before the state board of equalization at its annual meeting, which board shall proceed to assess said telegraph lines at the true cash value thereof.

96 M.—2

(1) Counsel for the telegraph company has pressed upon the court with earnestness and force that the statute under consideration does not authorize the taxation of franchises, intangible property, or of such property united in use with tangible property; that such an effect can be given it only by a forced construction; that a charge of the kind can be imposed only by clear and unambiguous language; and that such a statute must be strictly and critically construed, so as to secure property owners against confiscation, extortion, and plunder under cover of proceedings to collect revenue. He cited, inter alia, Potter, Dwarris, 255; Cooley, Taxn., 453; U. S. v. Wigglesworth, 2 Story, 369, 373, 374, Fed Cas. No. 16,690; Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 761; U. S. v. Breed, 1 Sumn. 159, Fed. Cas. No. 14,638; U. S. v. Watts, 1 Bond, 580, 583, Fed. Cas. No. 16,653; Brown v. Commonwealth, 98 Va. 366, 36 S. E. 485; Loughlin's Appeal (Pa.) 10 Atl. 832; Commonwealth v. Lehigh, 129 Pa. St. 429, 451, 18 Atl. 406, 410; Commonwealth v. New York, 145 Pa. 57, 64, 22 Atl. 212, 236; State v. Johnson, 20 Mont. 367, 51 Pac. 820; Williams v. Sanger, 10 East, 66, 69; Evening Journal Assn. v. State Board, 47 N. J. L. 36; Hart v. Smith, 159 Ind. 182, 189, 190, 64 N. E. 661.

No consistent rule for the interpretation of tax laws has been laid down by the authorities. Precedents can be cited from courts of high standing in large numbers to sustain almost any view contended for. The construction is sometimes aggressively hostile to the state (Blackwell, Tax Tit., 728, approved in Buell v. Boylan, 10 S. Dak. 180, 72 N. W. 406), requires the resolution of doubts against it (Commercial Bank of Augusta v. Sandford [C. C.] 103 Fed. 98, 100), and denies the propriety of applying thereto any equitable considerations (Lord Cairns, in Partington v. Attorney General, L. R. 4 H. L. 100, 122). More frequently the construction is merely strict. "A tax cannot be imposed without clear and express words for that purpose." Pollock, C. J., in Gurr v. Scudds, 11 Exch. 191, approved in U. S. v. Isham, 17 Wall. 496, 504, and in Treat v. White, 181 U. S. 264, 21 Sup. Ct. 611. In an increasing degree, however, the tendency is to construe tax laws, not literally, but liberally, to effectuate their manifest and reasonable purpose, and in the light of surrounding circumstances. Treat v. White, supra. "Revenue statutes are not to be regarded as penal, and

therefore to be construed strictly. They are remedial in their character, and to be construed liberally, to carry out the purposes of their enactment." Swain, J., in U. S. v. Hodson, 10 Wall. 395, 406. And see Cliquot's Champagne, 3 Wall. 114; Taylor v. U. S., 3 How. 197, 210.

Much of the apparent inconsistency of the formulas used will disappear when they are confined to the facts involved in the decision under consideration, especially with reference to whether the matter for determination be the right of the state to tax, the legal sufficiency of the language employed, or the machinery prescribed, the creation of the tax by officials of the law, or its collection. Usually a construction, liberal to the state, is applied to the earlier stages of tax proceedings which are anterior to the attempt by the state to collect the tax, as to the method of taxation and the determination of a sum to be collected as a tax; while a construction, strict as against the state, is applied to the later proceedings to seize and sell property in satisfaction of, or otherwise to collect, the tax as thus ascertained. In the instant case we have to do only with the adequacy of the words used by the legislature in this act to create a method for determining what tax telegraph companies shall pay. Decisions so numerous as to prohibit citation enforce both in spirit and in letter a fair and reasonable interpretation of the statutory language, so as to effectuate legislative intention, and with a distinct tendency towards a construction which would compel property protected by the state to contribute its share of public revenue, and which would avoid discrimination in taxation of property owners.

(2) The language of the statute here considered is inconsistent with the view that it seeks to tax tangible property only. It is true that apt terms like "corporate excess," "franchises," "good will," "system," "union in use," and the like, are not to be found in it. It is significant, however, and it is especially significant in connection with previous statutes upon this subject in this state, that the telegraph company is required to make known certain facts concerning its property affairs, but is not required to place a valuation thereon. The board of equalization is impressed with the duty of assessing, not the property set forth in a statement or list furnished by the telegraph company, but "the telegraph lines." The use of the term "lines" is ex industria. Stations are required to be listed by the telegraph company evidently as the

basis of a general valuation of a plant as a whole, not for taxation as such, because they are presumptively real estate. The language used imports an intention on the part of the legislature to require telegraph companies to give certain information for the use of the state board for assessing, not only the taxable property therein set forth, but telegraph lines considered as a system. The statute does not in terms require the board to base its value of the lines as such upon the information furnished by the owners thereof, but it is left free to ascertain such value in such equitable and practical way as it may adopt. The required information is intended to assist, not to control, the board in assessing the value of the lines.

(3) The official processes prescribed by this statute are appropriate for a tax upon a system, and not upon tangible property only. County officers can adequately value and assess physical entities, like wires, poles, and telegraph instruments, situated within their districts; but the valuation of tangible and intangible property united in use, belonging to a corporation doing business in many states, like telegraph companies, is as much beyond their actual capacity for investigation and appraisal as it is alien to the natural theory of their functions. It is common knowledge that, to remedy this executive inadequacy, the legislatures of the various states have vested the power to tax such systems as a whole in their state boards of equalization. In this instance the legislature has not provided at length for the machinery by which full inquiry can be made or a valuation reached for the tax which is to be levied; but there is not such a failure to provide details as to render the law invalid for that reason, as in Riley v. Western Union, 47 Ind. 511. Indeed, in practice it may happen that apparent legislative crudity may prove to be administrative potency. The law in this respect is drawn along the very lines suggested by economic writings and emphasized by academic discussions. The board is given by the telegraph company limited, but valuable, data. It can properly avail itself of information derived from the assessment of particular telegraph companies in other states and territories. Maish v. Arizona, 164 U. S. 599, 611, 17 Sup. Ct. 193. This knowledge can be largely increased from various sources of commercial intelligence and from market transactions, and may easily prove adequate to enable the board to make a fair approximation of what is a proper valuation for purposes

of levy.  The burden will then rest upon the telegraph company to demonstrate substantial error therein.  The cost and pains of making a full and fair report, conforming to law, of all taxable items, their situs for taxation, and their valuation are fairly and justly imposed upon it. Opportunity is given to appear before the board and to be heard as to any error in judgment or intent or law made by the officials.  The telegraph company has the same right as a private citizen of this state to go into the courts and secure a judicial determination as to the legal correctness of the adjudication of that board.

(4) To construe this law as imposing a tax upon tangible objects only would constitute gross discrimination by the state in favor of telegraph companies against its own residents, corporate and natural, and against foreign corporations in general, and would in effect exempt large amounts of taxable property receiving the protection of its laws and institutions from contributing to public revenue.  Domestic corporations are taxed upon their franchises and upon the value of their property of all kinds as a system.  G. S. 1894, § 1530; State v. Duluth Gas & Water Co., 76 Minn. 96, 78 N. W. 1033.  Private individuals are taxed upon their franchises.  G. S. 1894, § 1524, subd. 14.  The legislature of this state has provided adequate means for, and has required, the taxation of foreign corporations not assessed under laws providing particular methods.  Such corporations in practice are assessed under section 1524.  As has been stated, subdivision 14 of that section requires the listing and assessing of franchises.  Moreover, subdivision 27 requires the listing of

> The value of all other articles of personal property not included in the preceding  *  *  *  items.

This last omnibus clause is adequate for the taxation of the property of foreign corporations as a system.  Detroit v. Common Council, 125 Mich. 673, 85 N. W. 96, 103.  And see State v. Western Union, 165 Mo. 502, 65 S. W. 775, 781.

It is true that the taxing authorities of this state have failed to avail themselves of this means for properly increasing public revenue; but a privilege of exemption is not, therefore, to be based upon such official dereliction.  It is an obvious rule that a revenue statute should be construed upon the assumption that a legislature would make no discrim-

ination, and would not attempt to provide for the collection of taxes on one kind of property without making provision for the collection of taxes on all other property equally subject to taxation. Brewer, J., in Winona & St. Peter Land Co. v. Minnesota, 159 U. S. 526, 539, 16 Sup. Ct. 88; State v. Savage, 65 Neb. 714, 91 N. W. 716, 720. It is equally clear that a court should not hold a legislature to have intended to violate the constitutional requirement that all taxable property shall, for the purpose of public revenue, be assessed and at a cash valuation. Const. art. 9, §§ 1, 2, 3. And see G. S. 1894, c. 11, § 1508. In Adams Exp. Co. v. Kentucky, 166 U. S. 171, 183, 17 Sup. Ct. 527, 531, Fuller, C. J., said: "Neither is there any reason to suspect that the legislature did not understand the language and meaning of the constitution when it came to frame the revenue laws of the state under it. * * * Neither is there reason to suspect that it did not intend and endeavor in good faith to carry into effect the intent and meaning of the constitution, so that we may safely interpret all words and phrases (of doubtful and uncertain meaning) in accordance with, and so as to effectuate and carry out that intent." It is also well settled that exemptions must be in terms so specific and certain as to admit of no doubt. They will not be gratuitously construed into legislative enactments: Phœnix F. & M. Ins. Co. v. Tennessee, 161 U. S. 174, 177, 16 Sup. Ct. 471; St. Paul, M. & M. Ry. Co. v. Todd Co., 142 U. S. 282, 287, 12 Sup. Ct. 281; Salisbury v. Lane, 7 Idaho, 370, 63 Pac. 383.

(5) The law as thus construed is constitutional. Indeed, the historical and judicial considerations which demonstrate its validity necessitate the construction here given to it. To deprive the act of the effect of taxing the property of the telegraph company as a system would be an unjustified opposition to the most pronounced trend of the general opinion, and would constitute reactionary unreason. The current systems of state taxation of personal property originated when such property was limited in extent, trifling in value, and simple in form, and when extreme emphasis was placed upon the doctrine of equality, political and economical. The accepted theory of equality of contribution, as distinguished from equality of sacrifice, led to the universal requirement of listing and taxing tangible property only. In course of time, personal property, new in kind, unsubstantial in character, vast in extent, enormous in value, came rapidly into

existence. Very often, indeed, conditions which are capable of producing large returns are wholly beyond the conventional analysis of current law of property. For example, a large corporation engaged in interstate commerce undertakes to eliminate competition by lowering prices of its commodities in particular districts. It spends large sums of money in driving independent dealers out of business. It eventually profits by the effort. The monopoly, qualified or absolute, pays. What did that expenditure buy? How would any taxing official name, list, or assess what it obtained? It could not be accurately called an asset. To call it a franchise would be a gross misnomer. The terms "good will," "business facilities," "corporate excess," might be appropriate; but they are not found in the ordinary taxing statutes. Whatever nomenclature be employed, it is obvious that the original and current statutory enactments for taxing specific items of tangible property, apart from the "omnibus clause" referred to, do not contemplate such source of profit as a taxable object.

The difficulties of adequate taxation of personal property have been enormously increased by the revolutions in transportation, in connection with the legal rules governing interstate commerce, and the limitations imposed by the very nature of the jurisdiction of taxing districts. Accordingly the courts have been continually called upon to determine the legality of legislative attempts to keep pace with the developments of commerce and to compel ratable contribution to the support of the state by the various developers of these new forms of property and business. The decisions of the various courts, and especially of the Supreme Court of the United States, record a steady progress of the law toward more just, adequate, and equal taxation. One step was the transition from the fiction of the civil law, "Mobilia personam sequuntur," to the more natural rule that the state which protects property has the right to tax it, irrespective of the residence of its owners. Compare the Foreign-Held Bond Case, 15 Wall. 300, with New Orleans v. Stempel, 175 U. S. 309, 322, 20 Sup. Ct. 110. And see Savings & Loan Soc. v. Multnomah Co., 169 U. S. 421, 18 Sup. Ct. 392; Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 22, 11 Sup. Ct. 876; Bristol v. Washington Co., 177 U. S. 133, 139, 20 Sup. Ct. 585; In re Estate of Jefferson, 35 Minn. 215, 28 N. W. 256; People v. Smith, 88 N. Y. 576.

While the freedom of interstate commerce from interference by the state governments has been jealously guarded, the federal Supreme Court has completely and repeatedly sustained the economic propriety and constitutional validity of valuing the property of concerns engaged in interstate business as a unit, and of taxing by each state that proportion of the whole which such state protects. Postal Tel. Cable Co. v. Adams, 155 U. S. 688, 695, 15 Sup. Ct. 268, 360; Pittsburgh Ry. v. Board of Public Works, 172 U. S. 32, 19 Sup. Ct. 90; Adams Exp. Co. v. Ohio, 165 U. S. 194, 220, 17 Sup. Ct. 305; Maine v. Grand Trunk Ry. Co., 142 U. S. 217, 12 Sup. Ct. 121; Cleveland, C., C. & St. L. Ry. Co. v. Backus, 154 U. S. 439, 14 Sup. Ct. 1122; New York, L. E. & W. R. Co. v. Pennsylvania, 158 U. S. 431, 438, 15 Sup. Ct. 896. And see American Refrigerator Transit Co. v. Hall, 174 U. S. 70, 19 Sup. Ct. 599.

The issue presented in this case concerns particularly the constitutionality of taxation as a unit or system. Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 5 Sup. Ct. 826, held unconstitutional a state tax based on the theory of "homegenous unity" of substantial and unsubstantial assets. The later decisions of the United States Supreme Court, however, have established beyond controversy that property in part tangible, and as such having a physical situs within a state and in part intangible, having only a constructive situs therein, may be taxed upon a valuation derived from their connection as a system as a whole and as "united in use." Adams Exp. Co. v. Ohio, supra; 166 U. S. 185, 17 Sup. Ct. 604; Detroit v. Common Council, supra; State v. Savage, supra. The decision in Fargo v. Hart, 193 U. S. 490, 24 Sup. Ct. 498, has sometimes been erroneously regarded as containing a more or less complete reversal of this rule. The limitation that case contains is that a tax on an express company of another state proportioned to mileage is bad, when it appears that the total valuation is made up principally from real and personal property not necessarily used in the actual business of the company, and which is permanently located in the state where the company is incorporated. The general principle remains untouched and unassailed, namely, that a state may tax property, not the privilege of doing business, so as "to reach the intangible value due to * * * the organic relation of the property in the state to the whole system."

To separate telegraph companies into a distinct class for peculiar methods of taxation·upon their property, regarded not abstractly, but as a part of a system, does not violate the constitutional requirements of uniformity and equality. Western Union Tel. Co. v. Gottlieb, 190 U. S. 412, and collected cases at page 419, 23 Sup. Ct. 730, 733. And see State v. Western Union, 165 Mo. 502, 65 S. W. 775; Western Union Tel. Co. v. Taggart, 163 U. S. 122, 16 Sup. Ct. 1054; State v. Savage, supra; Pacific Exp. Co. v. Seibert, 142 U. S. 339, 12 Sup. Ct. 250; Home Ins. Co. v. New York, 134 U. S. 594, 606, 607, 10 Sup. Ct. 593.

We conclude that the language of this statute, properly construed, provides for the taxation of tangible and intangible property of the telegraph company, situated within this state as a system, and not merely for the taxation of segregated items of tangible property, and is constitutional.

The judgment of the trial court is accordingly reversed, and the case is remanded to the district court, with direction to proceed in accordance with this opinion.