EWERT, State Treasurer, Appellant, v. TAYLOR et al., Respondents.

(160 N. W. 797.)

(File No. 4066-4067.   Opinion filed December 30, 1916.   Rehearing denied February 7, 1917.)

1.   Taxation—Specific and Ad Valorem Taxes—Legislature as Source of Power to Impose—Limitation of Power—Constitution.

Upon property may be imposed two kinds of taxes—specific and ad valorem.   The right and power to impose one or both kinds upon any property within the jurisdiction of sovereignty rests in the legislative branch of government; and such right and power are without limitation or restriction, except such as are contained in fundamental law.   Under Const., Art. 11, Sec. 2, providing for valuations of subjects of taxation so that every person and corporation shall pay tax proportionate to value, all taxes upon property must be ad valorem.

2.   Taxation—Taxation According to Value—"Property," Meaning of—Constitution—Elements in Valuing Property.

Under Const., Art 11, Sec. 2, providing that all taxes shall be uniform "on all property," held, that the word "property" means the thing over which there may be ownership, as distinguished from right to possess and use it; and it extends to every valuable right and interest in property, easements, franchises, and other corporeal hereditaments, and everything of value, tangible or intangible, which is the subject of individual right or ownership; and, under any Constitution authorizing ad valorem tax on property—in absence of constitutional limitation prohibiting same—in assessing it, there should be considered not only the tangible thing but any and all intangible elements affecting its value.

3.   Taxation—Assessment of Intangible Property, For—Constitutional Provisions Compared.

No change, as regards power and duty of assessing officers to consider intangible property or elements, when assessing property for taxation, was effected by changing Const., Art 11, Sec. 2, providing that all taxes shall be uniform on all property, according to its value in money, to be ascertained by such rules of appraisement as the legislature may prescribe by general law, so that every person and corporation shall pay tax

in proportion to value of the property, and that by general law, provision shall be made for assessing taxes on corporate property, as near as may be, by same methods as are applied to individual property; the change therein, adopted in 1912, embracing a provision that taxes shall be levied and collected for public purposes only, and that among other things, gross earnings and net income shall be considered in taxing corporations.

4. Taxation—Public Service Corporations—Express Companies—"Unit Basis" of Taxation—Division of Unit, Taxing districts, Constitutional Authorization of.

As a result of carrying on business, there may exist a business unit exceeding in money value all tangible property used in connection with such business; the value of which unit rests in part upon that which is tangible in nature, and in order to a fair and equitable valuation of the property of a business concern, such as an express or railway company, for purposes of assessment, the value should be placed upon the unit. If it is necessary to divide such unit, owing to part being located in a particular taxing district, or to deduct from such unit value the value of some items of property, in order to prevent double taxation, or to distribute values for local levies, this may be done. This so-called "unit basis" for taxation was authorized under Const., Art 11, Sec. 2, before the amendment thereof in 1912; under which amended article gross earnings and net income are required to be considered in taxing corporate property and providing that such property shall, as near as may be, be taxed by the same methods as applied to taxing individual property.

5. Taxation—Constitutional Uniformity and Equality In—Assessment Proportionate to Value—Rate of Levy, Items of Property for Taxing Purposes, Taxing Districts as Related to.

Const., Art. 11, Sec. 2, providing that all taxes shall be uniform on all property, requires that all property must be assessed at a like proportion of its true value. The rate of levy must be the same on each separate item of property, for each separate purpose, within each taxing district, in order to secure constitutional uniformity; this, although one property, owing to its situs in one taxing district, may be taxed higher than another property situate in another taxing district.

6. Taxation—Situs of Property, for—Uniformity and Equality—Situs Where Tax Purpose Effectuated—Levy, Basis of.

While fixing of situs of property for taxation is largely a matter of legislative control, yet the Legislature cannot, by purely arbitrary edict, destroy uniformity in taxation by giving to property a situs for which there is no support in reason; but to be the beneficiary of the purpose of the taxation, the prop-

erty, either through itself or its owner, must have a situs within the district wherein the purpose is to be effectuated; and no property or portion thereof physically situate in one taxing district can be burdened with tax levy for a purpose local to another taxing district, unless, for good reason, the Legislature can declare the situs of such property to extend to the second district; and no property can be subjected to a tax levy made in another taxing district, even though such other levy be also one for a local purpose similar to that for which the levy in question is intended.

7.  Taxation—Methods of Taxing Power, Limitation on—Corporate Property, Rule of Assessment—Method to Bring Uniformity—Classification.

The legislative power to prescribe methods of taxation are unrestricted, except as to methods intended to promote lack of uniformity, or which conflict with fundamental rules, and except that methods for taxing corporate property must be, "as near as may be," the same as for taxing individual property. And under Const., Art. 11, Sec. 2, providing, among other things, for uniform taxation, and for assessing and levying of taxes on corporate property, as near as may be, by the same methods as applied to taxes on individual property, it is the duty of the Legislature to provide that method most likely to bring such uniformity and equality in taxation; to which end property may be arranged in classes, and different methods applied to each class, so long as the classification and methods provided do not promote inequality.

8.  Taxation—Assessment of Express Company—Assessment on "Unit Basis"—Gross Earnings, Consideration of—Statute Construed.

As against the contention of defendant express company that the tax commission's assessment of tax property was irregular, was on the unit basis, and was unauthorized by Laws 1907, Chap. 64 (re-enacted by Laws 1913, Chap. 347), providing (Sec. 17) that the tax commission, in assessing the property of express, etc., companies, shall "take into consideration the gross earnings of said company within the state," held, that the provision concerning gross earnings does not include a legislative intent that such property should not be assessed on the unit basis; and that provision and other provisions in said law, indicate an intent that such properties shall be assessed as a unit.

9.  Constitutional Law—Taxation—Express Company, Assessment of —Assessment "on Unit Basis"—Due Process of Law—Statute, Constitution, Construed.

The assessment of the property of an express company "on the unit basis," did not, in connection with the levy there-

under, amount to taking appellant's property without due pro-
cess of law, because unsupported by statute, in view of Laws
1913, Chap. 347 (re-enacting Laws 1907, Chap. 64), providing
(Sec. 17) that the state tax commission, in assessing the pro-
perty of express, etc., companies, shall take into consideration
gross earnings within the state, and (Sec. 16) that express,
etc., companies shall transmit to state auditor a statement
containing, among other things, the gross earnings of the
total business of such company within this state, etc., and
Const., Art. 11, Sec. 2, providing that by general law methods
of assessing and levying taxes on corporate property shall,
as near as may be, be the same as provided for taxation of
individual property.

10.   Taxation—Inter-state Commerce as Affected by—Assessment of
      Express Company on "Unit Basis"—Consideration of Inter-
      state Commerce by Tax Commission—Statute—Federal Con-
      stitution.

      Where the state tax commission, in assessing the property
      of an express company upon the "unit basis," did no more
      than consider certain matters pertaining in part to inter-state
      commerce in determining the value of defendant's business as
      a unit, under Laws 1913, Chap. 347, providing that said com-
      mission, in assessing such property, shall take into considera-
      tion gross earnings within the state, etc., held, that such assess-
      ment and a tax levied thereunder, was not in violation of the
      commerce clause of Fed. Const. (Art. 1, Sec. 8.)

11.   Taxation—Assessment of Express Company—Consideration of
      "Gross Earnings," "Net Earnings," Effect—Statute.

      Laws 1913, Chap. 347, providing that the state tax com-
      mission, in assessing express, etc., companies' property, shall
      take into consideration "gross earnings" within the state, etc.,
      while not expressly referring to "net earnings," was not un-
      constitutional; since it contains a provision for considering any
      and all other matters necessary to enable them to make a just
      and equitable assessment, which latter provision sufficiently
      warranted consideration of net earnings in valuing property.

12.   Taxation—Assessment of all Corporate and Individual Property
      —Methods of Assessment, as Between Corporate and Individual
      Property—Statute—Constitution.

      Under Const., Art. 11, Sec. 2, providing that assessment and
      levy "on all corporate property" must be by "general law,"
      and as near as may be, by the same methods as provided for
      the assessing and levying of taxes on individual property, and
      Laws 1913, Chap. 347, providing that the state tax commission
      shall, in assessing express, etc., companies' property, take into
      consideration gross earnings of the company within the state,
      and "any and all other methods necessary to enable them to

make just and equitable assessment of said property, in the same ratio as the property of individuals," held, that said statute is not unconstitutional in failing to cover all corporate property, or in failing to provide, in assessing such property, the same methods as are provided for assessing individual property; that the constitution not only allows but requires different methods whenever necessary to bring that uniformity required by the constitution.

13. **Taxation—Taxation of Corporations—Express, Etc., Companies —Uniformity, Equality—Right of Appeal from Assessment— Constitutionality of Statute.**

Laws 1913, Chap. 347 (re-enacting Laws 1907, Chap. 64), providing for taxation of express etc., companies, is not unconstitutional wherein it fails to give such corporation a right of appeal to the courts, and in effect makes the tax commission's assessment final; since uniformity in taxation means equality in burden and not equality in method; and also, in view of Laws 1913, Chap. 352, the tax commission must be composed of persons skilled in the subject of taxation and methods pertaining thereto, while matters coming before appellate equalization boards are such as cannot arise in relation to assessment made under said Chap. 347; and the methods, thus provided for, for arriving at uniform assessments, are as nearly alike as might reasonably be required in view of the differences in the assessing bodies.

14. **Taxation—Inequality—Express, Etc., Companies—Time of Payment—Constitutionality of Statute.**

Laws 1913, Chap. 347 (re-enacting Laws 1907, Chap. 64), wherein it provides that taxes assessed against certain corporations must be paid on or before March 30, while all other taxes can be paid one-half on April 1, the other half on or before October 31, is unconstitutional; since it can only result in inequality; the use of money being a thing of value; and the mere fact that such lack of uniformity may be slight, cannot be considered.

15. **Taxation—Uniformity—Levies Against Corporations—Different Methods of Enforcement—Constitution.**

Laws 1913, Chap. 347, wherein it provides a different method for enforcement of tax levies against corporations than that provided for collection of other taxes, is not unconstitutional, since this provision does not affect the amount of tax to be paid, or time of payment, and hence does not conflict with the rule of uniformity provided for by the Constitution.

16. **Taxation—Uniformity, Equality—Express, Etc., Companies— Levy, Average Rate for "Preceding Year," as Basis—Constitutionality.**

Laws 1913, Chap 347 (re-enacting Laws 1907, Chap. 64,) wherein it provides, as to express, and some other companies, for a rate of levy which is the average rate upon all property, for all purposes, throughout all taxing districts, "for the preceding year," while all other property, including that of railroad companies, is taxed at that rate of levy for the current year, is unconstitutional; since it must result in lack of uniformity and equality in taxation; the proper rate of levy being controlled by the assessed value of taxable property, and the amount to be raised in the particular taxing district for that purpose for which the levy is to be made.

17. **Evidence—Taxation—Rate of Levy, What Controls?—Judicial Notice of.**

The Supreme Court will take judicial notice that a rate of levy is ordinarily controlled by amount of tax needed to meet the purpose for which tax is levied and by assessed valuation upon which tax is to be raised.

18. **Evidence—Taxation—Change in Valuation of Property After Decision, Etc., Judicial Notice of.**

The Supreme Court will take judicial notice that, after certain of its opinions and after creation of the tax commission, a decided change in valuation of property for taxation purposes took place.

19. **Taxation—Situs of Express, Etc., Companies' Property—Situs Throughout State, Though its Burdens Local—Constitutionality of Statute.**

Laws 1913, Chap. 347 (re-enacting Laws 1907, Chap. 64,) wherein, as to property of express and other companies, it attempts to give them a situs throughout every part of the state as a basis for tax levy, while it recognizes that the burdens they should bear are local to the districts wherein they are actually employed, by distributing the taxes collected to such districts only, is unconstitutional; since, whether the Legislature's view in its enactment, followed the theory that the amount so levied in excess of the amount of state tax assessible against such special property practically equalled the amount of local taxes which such company would have had to pay if the assessed value of its property had been distributed through all local districts of the state in proportion which the general taxable property locally assessed bore to all the "general" taxable property of the state, and it had paid thereon its share of local tax in each district; or upon the theory that the amount so levied practically equalled the amount of local taxes such company would have had to pay if the assessed value of its property had been distributed throughout the taxing districts through which the company operated, and it had paid thereon

its share of the local tax in each district, it did not justify
resort to the method provided for; and, under said statute, it
was the average rate of local taxes throughout the state, not
the average rate of the local districts wherein the company
actually did business, that fixed the rate to be levied. More-
over, under such method of levy such property did in effect
pay local taxes in each taxing district, the amount of such
local tax being measured, not by the value of such property,
but by value of other property in such districts; and further-
more, under such system, the situs of such property changes
from year to year, not because of change of actual situs, but
solely owing to changes in proportionate distribution of other
property within the state; whereas the rate of levy must be
measured by the burdens which the property is to bear.

**20.  Taxation—Uniformity—Express,  Railway,  Etc.,  Companies'
Property—Situs Throughout State, When Rule Inadmissible—
Nature, Use, Ownership, of Property—Legislative Power.**

It is not within the legislative power to give to a railroad or
any other class of property, a situs throughout the state, when
neither the nature of the property, its use, nor ownership,
presents any fact or condition connecting such property with
any local burden to be borne by, or local purpose to be ad-
vanced within, the majority of the local taxing districts of the
state; that to attempt to so legislate would be a purely arbi-
trary act, and would result in lack of uniformity in taxation.

**21.  Taxation—Equality and Uniformity—Express, Etc., Companies—
Distribution of Taxes Among Counties, or Among Local Dis-
tricts in Counties—Levies Pro Rata With Preceding Levy—
Constitutionality of Statute.**

Laws 1913, Chap. 347 (re-enacting Laws 1907, Chap. 64,)
wherein it attempts to distribute taxes levied upon express and
other companies, other than the part belonging to the state,
among various counties wherein the companies are doing
business, to be by the county treasurers divided among county
and various local tax funds, either pro rata according to a levy
for such purposes made the preceding year, or according to lev-
ies made "upon other property for the preceding year," is un-
constitutional; since, whether such distribution be among all
local districts of each county, or among those only in which
the company does business, the amount of distribution for each
local district is in the same proportion to the whole amount
remitted to such company as the taxes, levied on other property
of such district for local purposes, bear to the whole amount
contributed for such purpose by all local districts, to which
distribution is made; and such distribution thereunder is to be
divided among the several funds within such county in exact
proportion which such funds already bear to one another; and,

however distributed among districts, such distribution is based, not upon the value of the special property taxed, but upon the value of the general property situated within such districts; which provisions of said chapter find no support under the Constitution.

22. Taxation—Equality and Uniformity—Express, Railroad, Etc., Property—Assessment on Mileage Basis for Local Taxation—Constitutionality of Statute.

Laws 1913, Chap. 347 (re-enacting Laws 1907, Chap. 64,) wherein it provides that the assessment for railroad, express, etc., companies' property upon the mileage basis, for purposes of local taxation, is not unconstitutional; since thereunder that part of the corporation unit in this state is assessed by the tax commission, as a unit, such unit being given a situs for taxation purposes in the state, and in the several counties, school, municipal and other local taxation districts within whose territory the lines of the company extend; the commission then assessing separately certain parts of the unit, which, from their nature, ought fairly to be liable for local tax burdens; and all levies are made thereon at the same rates as on other property taxable in such districts; and, deducting assessed valuation of such parts from the whole assessed valuation of that part of the unit situated within the state, the remainder is divided pro rata upon mileage basis among local taxing districts, and the same levies made thereon as upon other property.

23. Statutes—Taxation of Express, Etc., Companies—Constitutionality of Part of Statute—When Whole Act Held Unconstitutional.

Where certain provisions of Laws 1913, Chap. 347 (re-enacting Laws 1907, Chap. 64,) apply to telegraph, telephone, express and sleeping car companies, found to be unconstitutional, are so related to other parts of the statute as that the Legislature would not probably have enacted such remaining portions of the act as apply to such companies without them, all parts of the act relating to taxation of those specific properties will be held unconstitutional.

24. Taxation—Unincorporated Stock Company as Distinguished From Corporation—Assessment on "Unit Basis"—Constitutionality of Statute.

A statute which provides for assessment and levy of taxes against an express company, being an unincorporated stock company, upon the "unit basis," is not subject to the objection that it is unconstitutional because, under Const., Art. 11, Sec. 2, providing that all taxes shall be "uniform·on all property," and that "every person and corporation" shall pay proportionate taxes, etc., and because only corporate properties can be assessed upon a unit basis; the original of said constitu-

tional provision being broad enough to admit of the assessing of property on such basis, and the change made therein by the amendment of 1912 does not act as a limitation based upon ownership, of properties assessible upon a unit basis; and any property properly taxable as a unit, whether owned by an individual, a partnership, an unincorporated association, or a corporation, is taxable on said basis, if the Legislature has provided the proper machinery therefor.

Polley, P. J., taking no part in the decision.

Appeal from Circuit Court, Hughes County. Hon. JOHN F. HUGHES, Judge.

Proceeding to enforce tax levy by Adolph W. Ewert, as Treasurer of the State of South Dakota, against George C. Taylor, individually, and as president of the American Express Company, and the American Express Company, an unincorporated stock company. From a judgment cancelling a tax levy and reassessing defendant express company's property, and from an order denying a new trial, plaintiff appeals; and from that part of the judgment making a new assessment, and from the order denying a new trial, defendant express company appeals. Reversed, with directions to dismiss the proceeding.

*Bailey & Voorhees, (Carter, Ledyard & Milburn* of counsel), for Appellants.

*Clarence C. Caldwell,* Attorney General, and *Byron S. Payne,* Assistant Attorney General, for Respondent.

(1) To point one of the opinion, Respondent cited: Const. Art. 11, Sec. 2; Pol. Code, Sec. 2053; 37 Cyc. 717, 3; Cooley, Taxation, 383.

(8) To point eight of the opinion, Respondent cited: Wells Fargo & Company v. Johnson, 214 Fed. Rep. 187; Const., Art. 11, Sec. 2, as amended in 1912; State Railroad Tax Case, 82 U. S. 575; Beale on Foreign Corporations, Sec. 506; Wells Fargo & Company v. Geo. G. Johnson, 205 Fed. Rep. 60, on appeal, in 36 Sup. Ct. Rep. 62.

(9) To point nine of the opinion, Appellants cited: Const., Art. 6, Sec. 2; Wells Fargo v. Johnson, 214 Fed. Rep. 180; Johnson v. Taylor, 239 U. S. 234.

(10) To point ten of the opinion, Appellants cited: Galveston, Harrisburg & C. Railroad Company v. Texas, 209 U. S. 278.

Respondent cited:   U. S. Express Co. v. Minnesota, 223 U. S. 335, 56 L. ed. 459, 32 Sup. Ct. 210; Baltic Mining Co. v. Massachusetts, 142 U. S. 339, 35 L. Ed. 1035.

(11) Under point eleven of the opinion, Appellants submitted that: Chapter 64, Laws 1907, is in violation of the Constitution in that it attempts to make assessments upon certain classes of taxpayers with reference to their gross earnings; and cited: Const., Art. 11, Sec. 2, as amended in 1912; United States Express Company v. Minnesota, 223 U. S. 335; Johnson v. Wells Fargo & Company, 239 U. S. 234; Fargo v. Hart, 193 U. S., 490.

Respondent cited: U. S. Express Co. v. Minnesota, 131 N. W. 489 (Minn.); U. S. Express Company v. Minnesota, 223 U. S. 335, 56 L. Ed. 459, 32 Sup. Ct. 210.

(13) To point thirteen of the opinion, Appellants cited: Laws 1907, Chap. 64; and submitted that: The failure of the Legislature to provide a right of appeal to express companies, and to the other corporations assessed and taxed by the State Board of Assessment and Equalization, operates to deprive such corporations of their property without due process of law, gives to other citizens and corporations privileges and immunities not given to the express companies, and is in violation of the constitutional provisions for the assessment and levy of taxes on corporation property by the same methods as are provided for the assessment and levy of taxes on individual property.

Respondent cited: State ex rel. American Express Company v. State Board of Assess. and Eq., 3 S. D. 338; Sioux Falls Savings Bank v. Minnehaha County, 29 S. D. 146; C., B. & Q. Co. v. Babcock, 204 U. S. 585, 27 Sup. Ct. 326, 51 Law Ed. 636; Laws 1913, Chap. 352, Sec. 10; C. & N. W. Ry. Co. v. State, 128 Wis. 586; 108 N. W. 557.

(14) To point fourteen of the opinion, Appellants Cited: Laws 1907, Chap. 64, Secs. 21, 22; Pol. Code, Secs. 2192, 2185, 2195; Owensboro National Bank v. Owensboro, 173 U. S. 664.

(15) To point fifteen of the opinion, Appellants cited: Const., Art. 11, Sec. 2.

(16) Under point sixteen of the opinion, Appellants submitted that: With telegraph, etc., and express companies the Legislature, in enacting chapter 64, Laws of 1907, (Sec. 17),

abandoned the principle of uniformity of tax levy; and cited: Const., Art. 11, Sec. 2; Pingree v. Auditor General, 120 Mich. 95.

Respondent cited: C. & N. W. Ry. Co. v. State, 128 Wis. 586, 108 N. W. 557

(22) To point twenty-two of the opinion, Appellants cited: Const., Art. 11, Sec. 2; City of Chattanooga v. Railway Company, (Tenn.) 7 B. J. Lea, 561.

(24) To point twenty-four of the opinion, Appellants cited: Johnson v. Wells Fargo & Company, 239 U. S. 234; Laws New York, 1894, Chap. 325; Laws New York, 1909, Chap. 34, being Consol., Laws New York, Chap. XXIX. Const., N. Y., Art. 8, Sec. 3; People ex rel. Winchester v. Coleman, 133 N. Y. 279; Matter of Jones, 127 N. Y. 575; Wescott v. Fargo, 61 N. Y. 542; Van Aernam v. Bleistein, 102 N. Y. 335; Great Southern Fire Proof Hotel Company v. John, 177 U. S. 449; Civ. Code, Secs. 396, 397; Laws 1915, Chap. 235.

Respondent cited: State ex rel. Milwaukee St. Ry. Co. v. Anderson, 90 Wis. 550, 63 N. W. 746; State Railroad Tax Case, 92 U. S. 575, 23 L. Ed. 663; Sanford v. Poe, 165 U. S. 194, 41 L. Ed. 683, 17) Sup. Ct. 305; Adams Exp. Co. v. Ohio State Auditor, 166 U. S. 185, 41 L. Ed. 965, 17 Sup. Ct. 604. 604.

Respondent cited: Const., Art. 11, Sec. 2, as amended in 1912; Laws New York, Chapter 258, of 1849; Chapter 445, of 1851; Chapter 153, of 1853; Chapter 254, of 1854; Chapter 289, of 1867; Chapter 599, of 1881; Chapter 505, of 1885; Chapter 235, of 1894; Chapter 34, of 1909 (III Con. Laws, p. 1873); Cook on Corporations, Sec. 505, 6th Ed.; 2 Cook on Corp., Sec. 55; Wescott v. Fargo, 61 N. Y. 542; People ex rel. v. Wemple, 117 N. Y. 136, 6 L. R. A. 303; Const., Art. 17, Sec. 19; Adams Express Company v. State, 55 Ohio St. 69; Insurance Company v. Oliver, 10 Wall. 566, 19 Law Ed. 1029; Fargo v. Powers, 220 Fed. 697.

WHITING, J. Plaintiff, suing in his official capacity, seeks to recover the sum of $11,711.28—taxes levied for the year 1914 upon the property of defendant company. Hereinafter whenever we use the term "defendant" it shall be understood as referring to defendant company only. The trial court entered a judgment, canceling such tax levy and the assessment upon which it was

based, reassessing defendant's property at about 40 per cent. of the previous assessment, levying a tax of $4,450, and adjudging that defendant pay such $4,450. Both parties appealed—plaintiff from the whole judgment and from the order denying a new trial, defendant from that part of the judgment making a new assessment and levy and adjudging the payment of the $4,450, and from the order denying a new trial.

The assessment and levy, which were made the basis of this action, were made by the state Tax Commission. Its authority, if any there be, is to be found in article 11, § 2, of the state Constitution, and in chapter 64, Laws 1907, re-enacted by chapter 347, Laws 1913—hereinafter spoken of as "chapter 64." Article 11, § 2, of the Constitution reads as follows:

Article 11, § 2.    "All taxes shall be uniform on all property and shall be levied and collected for public purposes only. The value of each subject of taxation shall be so fixed  *    *    * that every person and corporation shall pay a tax in proportion to the value of his, her or its property. Franchises and licenses to do business in the state, gross earnings and net income, shall be considered in taxing corporations and the power to tax corporate property shall not be surrendered or suspended by any contract or grant to which the state shall be a party. The Legislature shall provide by general law for the assessing and levying of taxes on all corporate property, as near as may be by the same methods as are provided for assessing and levying of taxes on individual property."

Chapter 64 is an act relating solely to the assessment and taxation of the property of railway, telegraph, telephone, express,' and sleeping car companies. Following provisions relating solely to the taxation of the property of railway companies and other provisions relating solely to the taxation of the property of telephone and telegraph companies, we come to sections 16 to 23, which contain the provisions relating particularly to express and sleeping car companies. Those parts of these sections which we deem material to the matters discussed in this opinion read as follows, with the words "tax commission" inserted in place of "board of assessment and equalization" wherever those words occur in such sections and the word "commission" so inserted in place of "board:"

"Sec. 16.  *Express and Sleeping Car Companies—Statement of.*  Every express company and every sleeping car company doing. business in this state must transmit to the auditor of the state a statement of its business done within this state for the year ending on the thirtieth day of April preceding, which statement must be furnished on or before the first day of July of each year and shall contain the following items:

"First. The total number of employees engaged by such company within the state, and the number thereof in each county.

"Second. The total number of offices maintained by it within the state, and the number thereof in each county; the value of all office furniture, fixtures and real estate owned by it within this state.

"Third. The number of miles of railroad over which such express or sleeping car company conducts its business within the state, and the number of miles thereof in each county.

"Fourth. The total number of express cars or sleeping coaches owned by such company, and used within the state, and the number of such express or sleeping cars leased and controlled, but not owned by such company, and used within this state, or operated under lease or contract in any manner.

"Fifth.  The gross earnings of the total business of such company transacted within this state for the year ending April 30th preceding, and the value of all the property of such company used in this state.

"Sec. 17. *Property of Express and Sleeping Car Companies—When Assessed.* * * * And for the purpose of aiding the state tax commission in assessing the value of the property of such companies, it is hereby made the duty of the board of railway commissioners to collect information and facts concerning the value of the property of each express and sleeping car company in this state and to make an estimate of said value and to make and file with the state auditor on or before the first day of July of each year a written and detailed report of such information, facts and estimate.

"The state tax commission shall, on the first Monday of July each year assess all the property of every express and sleeping car company doing business in this state and used in the operation and maintenance of its business, and in doing so shall

take into consideration the gross earnings of said company within the state for the year ending on the thirtieth day of April preceding the statements made by said companies and by the board of railway commissioners and any and all other matters necessary to enable them to make a just and equitable assessment of said property in the same ratio as the property of individuals. All the statements aforesaid and information received shall be laid before the tax commission, which commission shall review said statement or information and may change the valuation given or add to said statement any property omitted therefrom, and said commission shall levy a tax upon said property, which tax shall be equal to the average amount of state, county, school, municipal, road, bridge, and other local taxes levied upon other property for the preceding year, and the auditor shall notify each company of the amount of taxes so levied.

"Sec. 18. *Form of Statement.* The statement of said companies required by this act shall be made according to such forms and instructions as may be prescribed by the state auditor and with reference to property owned on the first day of May of the year for which the return is made. * * *

"Sec. 19. *Taxes—When Paid.* Each express and sleeping car company so assessed shall on or before the first day of March of each year, pay to the state treasurer, the amount of tax levied on its property for the year preceding, which shall be in lieu of all other taxes.

"Sec. 20. *Apportionment of Taxes.* The state treasurer shall apportion the amount of taxes received under the provisions of this act between the state and the various counties in which such company is doing business, as herein provided.

"The amount to which each is entitled shall be determined by the state tax commission and the county treasurer shall distribute the portions received by his county to the various county and local funds according to the levies made upon other property for the preceding year.

"Sec. 21. In case any telegraph, express, telephone, and sleeping car companies doing business in this state shall fail or neglect to pay the tax due it to the state for a period of thirty days after the same shall have become due, there shall be added to such tax a penalty of twelve per cent. per annum."

"Sec. 23. *Notice.* The state tax commission shall give at least ten days' notice of the time and place of its meeting, provided for in this article, to the officer of any railroad, telegraph or telephone company or other corporation making a return of the property of their company to the said commission for the purpose of assessment and taxation, of every increase made by said commission on the valuation of any of the property returned as aforesaid, for the purposes aforesaid, or of any addition made to said returns, and said companies shall have the right to appear and be heard, before said commission in all matters relating to the assessment of the property of said company."

The defendant transmitted to the state auditor the report required under section 16. The commission met at the time fixed by section 17 for the assessing of the property of express companies. Defendant appeared by counsel and objected to any assessment being made in an amount greater than $18,667.85—the amount which it had returned as the value of its tangible property within this state. Disregarding such protest the commisson proceeded to fix a valuation on defendant's property in this state and did fix such valuation at $1,172,300. The commission entered upon its minutes a record of such assessment, such record containing an extended statement of the matters considered in arriving at the valuation determined upon. It is apparent from such record, and it is conceded, that the commission, in making such assessment, purported to assess defendant's property upon what is commonly spoken of as the "unit basis." The commission fixed the time and place when and where it would meet as a board of equalization, when companies interested might appear and be heard in reference to all matters relating to the assessment they had made. Defendant appeared at the time and place so fixed and filed a written protest, protesting against the assessment that had been made; but the assessment was sustained by the commission. The commission thereafter levied a tax on defendant's property, which levy the trial court found "was equal to the average amount of state, county, school, municipal, road, bridge and other local taxes levied upon other property in the state of South Dakota for the preceding year." The rate of levy was 9.99 mills and the amount of levy the $11,711.28 for which this action was brought. Defendant, contending that it had no

property in this state subject to levy other than its tangible property (conceded to be of the value of $18,667.85 only if valued separate from the business in which it is used) tendered to plaintiff, in full payment of its taxes for 1914, the sum of $184.81— that being, as will be seen, the amount of a tax on a valuation of $18,667.85 with the rate of levy 9.99 mills. This tender was rejected.

It will be seen that plaintiff is seeking to recover some 63 times the amount tendered by defendant. Upon oral argument in this court, defendant, while contending that there is no law under which it can be required to pay any greater amount than that tendered, admitted that, in all fairness and in conformity with the amount of taxes paid by it in other states, it should pay somewhere about 12 times such amount. It thus virtually concedes that it is possessed of property the value of which is such that, if properly divided for taxation among the states in which it does business, would entitle this state to recover taxes far in excess of those that could be based solely upon the value of its tangible property situate in this state. Defendant has filed a statement setting forth the history of the tax disputes that have arisen in the past between this state and the various express companies doing business herein—detailing the various assessments and levies that have been made, the litigation that has grown out of same, and the results of such litigation. This history serves at least one purpose—it impresses upon us the great importance of a speedy and full determination of the many questions presented upon these appeals, not only those questions the determination of which are absolutely necessary to an affirmance or reversal of the judgment appealed from, but all whose consideration may lead to an announcement of those principles and rules necessary to be followed in the enactment and enforcement of taxation laws. To emphasize this importance we need only note that the record presented discloses that, under the several assessments made by the commission for the year 1914, it has levied against the several express companies doing business in this state the sum of $29,-105.60; that, if no tax, except that upon the tangible property of such companies, can be levied under our present laws, the state can collect for such year but about $450 in all, although, under the admission of this defendant, such companies should, as a

matter of justice, pay for such year at least $5,000 taxes; that, during the six years from 1909 to 1914, inclusive (with defendant prevailing in the present action), the state will have lost some $25,000, which, according to defendant's concession, should have been received from these companies; and that, if the several assessments that have been made during such years have not been excessive, the state has lost over $150,000, which could have been collected under proper laws. If we have not laws under which the properties of these companies can be required to bear their fair share of the burdens of government, it certainly is time that such laws were enacted to the end, not only that such burdens be hereafter borne, but that such companies may be required, even yet, to pay such taxes as they should have paid in the past.

It would be impossible for one to give any study to the question of taxation without being impressed with the complexity of the same. We are not called upon to, and we do not presume to, express any views as to whether the system of taxation adopted in this state is the best, or even a good, one—that system has been established by the people themselves. It is only for us to determine what it is, whether there is legislation under which it can be carried out, and, if it becomes necessary for the determination of this appeal, whether such legislation as we have has been complied with.

[1] No one will question the right of every sovereign government entity to raise, by some one or more species of taxation, the wherewithal to support such entity and to allow of the discharge of its functions. Among those species or kinds of taxation in use, the most common and that which, at least in modern days, furnishes the greater volume of revenue is the taxation of property. Upon property there may be imposed two kinds of taxes—the one known as specific, the other ad valorem. Under our system of government the right and power to impose one or both kinds upon any property within the jurisdiction of the sovereignty rests in the legislative branch of government; and such right and power are absolutely without restriction or limitation except such as are contained in the fundamental laws. Under article 11, § 2, supra, all taxes upon property must be ad valorem.

[2, 3] What is included in the term "property" as used in our Constitution? We think it fair to assume that the framers of such Constitution, when using the word "property," had in mind the thing of which there may be ownership as distinguished from the right to possess and use the thing. Chicago & N. W. Ry. Co. v. State, 128 Wis. 553, 108 N. W. 557. As so used it "is nomen generalissimum," and extends to every valuable right and interest, including real and personal property, easements, franchises, and other corporeal hereditaments ( Words and Phrases); and includes everything of value, tangible or intangible, capable of being the subject of individual right or ownership (First Nat. Bk. v. City Council of Estherville, 136 Iowa, 203, 112 N. W. 829; Chicago & N. W. Ry. Co. v. State, supra). A piece of property tangible in its nature may have attached thereto as an element or incident something intangible in its nature that enters largely into its value and is absolutely inseparable therefrom. Two stallions might each be possessed of the same good points and apparently so much alike that any competent judge would place the same value thereon, except he be advised that one is of pure bred stock and the other not. Upon receiving such information the judge should and undoubtedly would place a much higher value upon the one than the other. Two business buildings are erected in the same city; they are exact duplicates the one of the other and when finished, being similarly located for business purposes, they are of equal value; time passes and the business district shifts; one building is left out of the business district, the other is now in the very center thereof; the one becomes of far greater value than the cost of the materials and work put therein while the other has no value except for purposes of dismantling. Good will, franchises, earning capacity, even the right to sell liquor in a building, are elements to be considered in determining the true value of that to which they are incident. Claringbold v. Council of Newark (Del.) 94 Atl. 1102, L. R. A. 1916E, 1101; note, L. R. A. 1916C, pp. 529-544. It follows that, under any Constitution authorizing an ad valoreum tax on property, unless there is some limitation placed by such Constitution which prohibits same, there should be taken into consideration, when assessing property, not only the tangible thing, but any and all intangible elements affecting its value. Adams Exp. Co. v. Ohio

St. Auditor, 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683; cases cited in note L. R. A. 1916C, pp. 529-544. Prior to the year 1912, article 11, § 2, of our Constitution read:

"All taxes to be raised in this state shall be uniform on all real and personal property, according to its value in money, to be ascertained by such rules of appraisement and assessment as may may be prescribed by the Legislature by general law, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property. And the Legislature shall provide by general law for the assessing and levying of taxes on all corporation property, as near as may be by the same methods as are provided for assessing and levying of taxes on individual property."

Absolutely no change, as regards the power and the duty of assessing officers to consider intangible property or elements when assessing property was effected by the change of such section to its present form. Under either it would be the duty of the assessing power, when fixing value of property, to consider every matter affecting the value of such property and to attempt to arrive at the true value thereof.

[4] As the result of the carrying on of a business there often comes into existence a business unit far exceeding in money value all the tangible property used in connection with such business. This business unit is property whose value rests in part upon that which is intangibe in its nature—indeed the intangible elements may be the source of the greater value. One can readily see that in a going business, such as that of an express or railway company, the tangible property used therein might, if separated from the business in which used, have a value small as compared to that of the business entity taken as a unit. The following words of the court in Chicago & N. W. R. Co. v. State, supra, are as applicable to the property of telephone, telegraph, express, and sleeping car companies as to that of a railway company:

"One might as well try to value the life blood of a horse, or his capacity to breathe, as try to place a value upon the visible part of railroad property separate from its rights, franchises, and privileges."

In order to arrive at the fair and equitable value of the property of such a company for purposes of assessment, the value should be placed upon the unit. If it is necessary to make a division of such unit—owing to part only being located in a particular taxing district, or to deduct from such unit value the value of some item or items of property—in order to prevent double taxation or to make distribution of values for local levies, this can readily be done. That this so-called "unit basis" for taxation was authorized under article 11, § 2, before the amendment of such section seems too well established to admit of question. Chicago & N. W. Ry. Co. v. State, supra; State v. Jones, Aud., 51 Ohio St. 492, 37 N. E. 945; United States Exp. Co. v. Minnesota, 223 U. S. 335, 32 Sup. Ct. 211, 56 L. Ed. 459; Adams Exp. Co. v. Ohio State Auditor, supra, and cases cited therein. The amendment added nothing in this respect.

[5] The Constitution provides that "all taxes shall be uniform on all property." This is the all-controlling mandate of the people—every item of taxable property, so near as the frailties of human judgment will permit, must be required to share the burdens of taxation equally with every other item of like value situate within the same taxing district. To this end all property must be assessed at a like proportion of its true value; and the rate of levy must be the same, on each separate item of taxable property, for each separate purpose, within each taxing district. So long as these rules are followed, constitutional uniformity is secured although one property, owing to its situs in one taxing district, may be taxed much higher than another property situate in some other taxing district.

[6] The fixing of the situs of property for any purpose is largely a matter of legislative control; but action by the Legislature must not be purely arbitrary and without any reason except the desire to do indirectly what might not be done directly. Therefore a Legislature cannot be allowed, by a purely arbitrary edict, to destroy uniformity in taxation by giving to property a situs for which there is no support in reason. As stated in Cooley on Taxation (3d Ed.) 225-227:

"The burden of a tax must be made to rest upon the state at large or upon any particular district of the state according to whether the purpose for which it is levied is of general concern to

the whole state, or, on the other hand, pertains only to the particular district."

To be the beneficiary of the purpose of the taxation, the property, either through itself or its owner, must have a situs within the district wherein the purpose is to be effectuated. No property or portion thereof physically situated in one taxing district can be burdened with any tax levied for a purpose local to some other taxing district, unless, for some proper reason, the Legislature can declare the situs of such property to extend to the second district. No property, or portion thereof, situated in one taxing district, can be subjected to the levy of a tax for any local purpose, and have the amount of such levy based upon the rate of levy in another taxing district even though such other levy be also one for a local purpose and such purpose a like one to that for which the levy in question is intended.

[7] The methods through which the taxing power of this state shall be made effective are within the control of the legislative branch of our government. Its right and power to prescribe methods are in no manner restricted except that it cannot resort to any method intended to promote a lack of uniformity in results or which conflicts with fundamental rules such as those above mentioned, and except that the methods prescribed for taxing corporate property must be "as near as may be" the same as those for taxing individual property. Therefore, where the nature of the property, its use, the generality of its situs, or any other fact or condition requires the following of a method out of the ordinary in order that the ultimate object—uniformity in burden—be achieved, it is not only the right, but it is the duty, of the Legislature, under the mandate of the Constitution, to provide that method most likely to bring about such uniformity. Property may be arranged in classes and different methods applied to each class so long as such classification or the methods provided are not such as are designed to promote inequality. Chicago & N. W. R. Co. v. State, supra, and authorities therein cited.

Summarizing what we have said above, we can do no better than quote the words of the federal Supreme Court in Adams Exp. Co. v. Ohio State Auditor, supra:

"Exact equality and justice are not possible in any system of taxation and no one expects them. There are many methods

which may be employed and opinions differ concerning which is the best, and among these the Legislature has an uncontrolled discretion. But one thing is essential to any method, and this is that it should have an eye to equality and uniformity. Without this, statutory enactments to compel the payment by the citizen of money in the name of taxes are mere arbitrary exactions; indeed their proper name is robbery, and they are none the less robbery because clothed with the exterior form of law."

[8] Defendant contends that the proceedings of the tax commission were irregular, in that, in making the assessment, the commission considered many matters only proper to be considered in making an assessment on the unit basis; that the assessment as made was virtually one on the unit basis; and that chapter 64, supra, does not authorize such an assessment. As we have said, our Constitution is broad enough in its terms to warrant the Legislature to adopt any method or system designed to effectuate the will of the people—uniformity of taxation. We must presume that it was the legislative intent to effectuate and not prevent the consummation of the people's will. Certainly those provisions which direct the commission, when making an assessment, to "take into consideration the gross earnings * * * and any and all other matters necessary to enable them to make a just and equitable assessment" do not contain anything that would indicate that the Legislature intended that the properties mentioned in such law should not be assessed on the unit basis; and other provisions of such chapter indicate, beyond all possible question, an intent that the properties of the companies therein mentioned should be assessed as a unit.

[9] What we have said above disposes of defendant's contention that the enforcement of this assessment and levy would be the taking of appellant's property without due process of law because unsupported by statute.

[10] Defendant contends that the assessment violated the commerce clause of the federal Constitution (article 1, § 8)—that a tax levied on such assessment would constitute a tax upon interstate commerce. There is absolutely no merit in such contention. It does not appear that the tax commission did more than to consider certain matters, that pertained in part to interstate com-

10—Vol. 38, S. D.

merce, for the purpose of determining the value of defendant's business as a unit. Certainly persons or corporations engaged in interstate commerce should bear their proper share of the burdens of the governments under whose protection they conduct their operations. United States Express Co. v. Minnesota, supra.

[11] Defendant contends that chapter 64 is unconstitutional because it provides for taking into consideration "gross earnings" and not "net earnings" in making assessments. It certainly would have been better if the Legislature had made the same express reference to "net earnings" that it did to "gross earnings," but in that catch-all, "any and all other matters necessary to enable them to make a just and equitable assesment" is to be found sufficient warrant for considering "net earnings" when valuing property. We would not be understood as in any manner underestimating the importance to be placed upon "net earnings" as compared with "gross earnings." Net earnings, being a much better basis for measuring the real value of property than gross earnings, should be given much the greater weight in fixing values. Railroad & Telephone Cases v. Board of Equalization (C. C.) 85 Fed. 302. Earning capacity should be given more weight often than actual earnings. State v. Illinois C. R. Co., 27 Ill. 64, 79 Am. Dec. 396; State v. Virginia & T. R. Co., 24 Nev. 53, 49 Pac. 945, 50 Pac. 607. But it should be borne in mind that, in determining earning capacity from earnings, it is not the earnings of any one year, but rather for a number of years that should control. Western Union Telegraph Co. v. Dodge Co., 80 Neb. 18, 113 N. W. 805, and 80 Neb. 23, 117 N. W. 468. It should also be remembered that there are many classes of property whose value cannot be measured by its earnings or earning capacity—it may have no earning capacity as in the case of jewelry, or its earnings each year may in fact diminish its value as in case of mines. Annotated Note L. R. A. 1916C, pp. 529-544.

[12] Defendant contends that chapter 64 is unconstitutional because the Constitution requires that the assessment and levy on "all corporate property" must be by general law "as near as may be by the same methods as are provided for assessing and levying of taxes on individual property," and that this law does not cover all corporate property, or provide the "same methods as

are provided for assessing * * * individual property." We have already fully covered this question—the Constitution not only allows but requires different methods whenever such different methods are necessary to bring that uniformity required by the Constitution.

[13] Defendant contends that chapter 64 is unconstitutional because it does not give to the classes of corporations therein mentioned any right of appeal to the courts, such as is given to other taxpayers from the county board of equalization. Plaintiff contends that, inasmuch as all corporations whose property is assessed by the tax commission are treated alike, defendant cannot complain. He says:

"We repeat uniformity in taxation means equality in burden, not equality in method. It was competent for the Legislature to make the state board the final judge for the assessment of property for certain classes of property holders just as it made the court the final judge in others."

We think plaintiff's claim to be sound. It must be presumed that, in re-enacting said chapter 64, the Legislature had in mind the provisions of article 11, § 2, of the Constitution; also that it considered the provisions of chapter 352, Laws 1913, which had been enacted by it but a few days previous. This last statute is the one creating the commission, and it provides that such commission shall be appointed "by the Governor and with the advice and consent of the Senate"—also that "The persons to be appointed as members of such commission, shall be such as are known to possess knowledge of the subject of taxation and skill in matters pertaining thereto." The boards from whose action an appeal to the courts is given are boards composed of members chosen without special consideration of their qualifications as taxation officers. The matters coming before the boards, from whose actions appeals lie, are mainly matters of equalization as between individuals or as between local taxation districts—matters which, from the very nature of things, cannot arise in relation to assessments made under chapter 64. There is given no appeal from the action of the tax commission whether such action relate to the property of corporations mentioned in this law or whether it relates to the equalizing of assessments made by the local assessors. We think the methods thus provided for, for arriving

at uniform assessments, are as near alike as might reasonably be required in view of the differences in the assessing bodies. We do not believe defendant has been deprived of any constitutional right in having to submit to the honest judgment of this specially qualified board. Cin., N. O. & Tex, Pac. R. R. Co., etc., v. Commonwealth, 81 Ky. 492.

[14] Defendant contends that chapter 64 is unconstitutional because it provides that certain taxes assessed thereunder must all be paid on or before March 30th, while all other taxes, even certain taxes assessed under this same law, can be paid one half on April 1st, and the other half on or before October 31st. This provision requiring payment on an earlier date is one which, from its nature, can only result in inequality—the use of money being a thing of value. There is a fundamental difference between laws under which lack of uniformity and equality may arise owing to defects in human judgment, and laws which absolutely contravene the provisions of the Constitution by themselves creating a lack of uniformity and equality. The mere fact that such lack of uniformity or equality may be slight cannot be considered in support of a law so inherently bad.

[15] Defendant contends that chapter 64 is unconstitutional in that, as regards certain of the taxes levied thereunder, it provides a different method for the enforcement of their payment than that provided by the laws regulating the collection of all other taxes. Inasmuch as this provision in no manner affects the amount of tax to be be paid or the time of its payment, it does not conflict with the rule of uniformity provided by the Constitution. The difference in methods is fully justified by the difference in the natures of the properties upon which the two taxes are levied.

Defendant contends that chapter 64 is unconstitutional because the property of the companies therein mentioned is assessed on a mileage basis among different districts regardless of the district in which each particular item of its property is situated. This contention is fully answered in our discussion of still other contentions of defendant.

[16-18] Defendant contends that chapter 64 is unconstitutional because, in so far as the property of express and some other companies therein mentioned are concerned, the rate of levy

thereon is the average rate of levy upon all property, for all purposes, throughout all the taxing districts of the state, "for the preceding year," while all other property of every kind and nature, including the property of railroad companies, is taxed at that rate of levy for the current year that has been fixed for each separate purpose in those taxing districts only in which the property assessed is situated.  To arrive at the rate of levy for these special properties, the commission finds the full amount of taxes that were levied during the previous year on all other properties for all purposes, in all the taxing districts of the state, then, with the total assessed valuation of all the property in the state for such preceding year as a basis, it determines what was the average rate of levy, for all purposes, for the preceding year. The rate so arrived at is accepted as the rate to be levied during the current year upon these special properties.  We have no hesitancy in declaring such provisions unconstitutional.  Absolutely the only excuse that can be given for using the taxes levied the previous year as the basis for arriving at a rate for the current year is, that it is necessary inasmuch as this rate of levy must be arrived at before the data is obtainable from which the average rate of levies on other property for the current year could be determined.  But, even if we were to concede, which we do not, that this was a necessity that justified resorting to the levies of a previous year upon which to determine the rate of levy on certain special property during the current year—a thing which in itself must result in lack of uniformity, we should yet hold this method of fixing rate of levy for these special properties—to be unconstitutional.  The rate of levy is controlled by the assessed value of property to be taxed and the amount that is to be raised in the particular taxing district for that purpose for which the levy is to be made.  The only theory upon which the average levy for county purposes, for school purposes, for municipal and other local purposes, as levied throughout the several local taxing districts of the state upon property in general, can be imposed upon these special properties is, that such properties have a situs not merely within the state—all that would be necessary for a levy of taxes for state purposes, but that they each have a situs throughout the state—a fact necessary in order to require them to meet the burdens imposed for purposes local

to the numerous local taxing districts of the state. As hereinafter explained, we do not believe that any such situs can be given to these properties. Moreover this court will take judicial notice that a rate of levy is ordinarily controlled by the amount of tax that will be needed to meet the purpose for which such tax is levied and by the assessed valuation upon which the tax is to be raised. Whenever either the needs of the district change or the value of its property changes, the local rate of levy changes. When you take a levy based upon the needs and valuation of a previous year and apply it to the valuation of the current year, the tendency must be to create inequality and lack of uniformity as compared with taxes based on both the needs and valuation of the current year. It will not do to say that the inequality is so slight as to be immaterial. It may not be slight; but, even if slight, the inequality is one that the law compels and not one that flows from defects in human judgment. It will not do to say that the effect of this law is merely to postpone the payment of the tax a year. The tax does not purport to be and is not a tax for the preceding year. If so it should be based both on the rates of the previous year and upon the valuation of the particular company's property the preceding year. That this law might and often would result in gross inequality is patent. This court will take judicial notice that, after the opinions of this court in Bagley Elev. Co. v. Butler, 24 S. D. 429, 123 N. W. 866, and Savings Bk. v. Minnehaha County, 29 S. D. 146, 135 N. W. 689, Ann. Cas. 1914D, 910, and after the creation of the tax commission, a decided change in the valuation of property for taxation purposes took place. The total valuation of one year exceeded the total valuation of the preceding year some 300 per cent. It can readily be seen what injustice would follow the imposing on some property of a tax based upon the average rate of levy when all property was assessed at low valuation, while there was imposed on all other property a rate based upon a greatly increased valuation.

[19,20] We also hold chapter 64 to be unconstitutional in that, so far as the properties of telegraph, telephone, express, and sleeping car companies are concerned, it attempts to give them a situs throughout every part of the state as a basis for the levy to be imposed, and at the same time recognizes that the burdens they

should bear are local to the district wherein they are actually employed, by distributing the taxes collected to such districts only. We have little doubt but that the original enactment of this act was inspired by the decision in Chicago & N. W. R. Co. v. State, supra, which construed a statute of Wisconsin and which had but lately been decided. The Wisconsin law related solely to railroads. It fixed the rate of levy to be imposed for all purposes on this special property by the same method prescribed in chapter 64 for fixing the rate for telegraph, telephone, express, and sleeping car companies. It also provided that the entire tax so levied should be paid into the state treasury; but, instead of providing for any distribution among local districts, it provided that the entire tax should be retained by the state treasury. Of course such law could not have been upheld upon the theory that this levy was all for state purposes, as railroad property could not in Wisconsin any more than in South Dakota, be burdened for state purposes to any greater extent than other property; neither could railroad property rightfully escape its proper share of the local taxes imposed for local purposes in those districts in which such railroad property had a situs. To uphold this provision of the Wisconsin statute the court, in the above case, advanced the following unique if not convincing line of reasoning. It said:

"It does not seem that the law in question should be regarded as a mere enactment to raise money for state purposes. It is called one to provide for the taxation of railroad companies. The manifest purpose thereof is to tax the railroad property in the state upon the same basis that all other property is taxed; tax it by the same system (the ad valorem way), at the same rate, and for the same purposes. Whether the plan of the Legislature be reasonably calculated to effect such purpose we need not enlarge upon at this point. If necessary to the validity of the law, and the idea would be reasonable, we must assume that such was the legislative design and read it out of the law if it is there in any way expressed. It was thought, seemingly, that the amount of money which would probably annually be required to be raised by direct taxation, so far as the same could well be determined when the law was passed, with the amount which would be obtained annually from all other sources of state revenue, would probably equal or exceed the amount of direct tax burdens that would fall

on railroad property, if it were burdened, in effect, the same as if it were taxed, proportionally, in all the taxing districts of the state, on an equality with general taxable property therein, the value of the former being, for that purpose, apportioned thereto, in the proportion which the value of such general taxable property in such districts, respectively, would bear to the total value of such property throughout the state, or, perhaps, if such special property were taxed on a similar basis of distribution in all of the taxing districts of the state through which the roads run. It was further, doubtless, thought that the average rate provided for by the law would, as near as the same could be practically determined, be equivalent to such taxes as would, upon such a distribution, be imposed on the special property. It was further, and within reasonable probabilities, thought, as it would seem, that by applying to the value of special property the average rate of taxation imposed on general property throughout the state, and appropriating all of the results for state purposes, in practical effect each taxing district, while proportionally more heavily burdened for local purposes than it would be under some such method of distributing the value of the railway property for taxation as mentioned, it would be correspondingly, as to every dollar of taxable property therein, relieved from state taxes, thus making all property taxed directly, in fact though not in form, bear its relative proportion of all taxes upon a basis of equality. That would satisfy all the requirements of the section of the Constitution under consideration."

From a reading of the above it will be seen that the court holds that the railroads met their share of such local burdens indirectly, in that the local districts did not have to raise as much state tax as they otherwise would—that, in effect, it was just the same as if this railroad tax were distributed throughout the numerous local districts wherein this special property was situated, and then each local district paid into the state treasury an increased state levy. The court holds that the Legislature might have thought that the amount levied against railroad property in excess of the amount of state tax assessable against such special property practically equaled: Either the amount of the local taxes which the railway company would have had to pay if the assessed value of its property had been distributed throughout all the local

districts of the state in the proportion which the general taxable property (that is, all property locally assessed) of each taxable district bore to all the "general" taxable property of the state and it had paid thereon its share of the local tax in each of such districts; or the amount of local taxes which the railway company would have had to pay if the assessed value of its property had been distributed throughout the taxing districts through which the railroad runs and it had paid thereon its share of the local tax in each of such districts. As will appear from the provision of chapter 64, if we were to indulge in an attempt to determine what was in the minds of our legislators, we would be bound to presume that they were impressed with the second one of the above views. To our minds it seems clear that, whichever of these two views the Legislature might have held, it did not justify resort to the method provided for; moreover, we can discover no possible line of reasoning which might result in the logical adoption of either of such views. In the Wisconsin statute, as in chapter 64, it was the average rate of local taxes throughout the state, and not the average rate of those local districts wherein the railroad actually did business, that fixed the rate to be levied on the railroad property. If the Wisconsin Legislature intended to give this special property a situs throughout the state, not only for the purpose of fixing the rate of levy, but also for purpose of distribution of taxes paid, its legislation cannot be supported for two reasons. While a Legislature is vested with power to fix the situs of property for purposes of taxation, such power, as we have already stated, is not without limitation. Its action must not be a mere arbitrary act, based upon something having no relation to the actual facts or conditions. We do not agree that it is within the power of a Legislature to give to a railroad, or any other class of property, a situs throughout the state, when neither the nature of the property, its use, nor its ownership presents any fact or condition connecting such property, any more than other classes of property with any local burden to be borne by, or local purpose to be advanced within, the vast majority of the local taxing districts of the state. Take the Rapid City, Black Hills & Western Railway, situate entirely within one county of this state, or any one of many local telephone lines within this state, each situate perhaps within the borders of not to exceed two town

ships—to attempt by legislation to give to such properties a situs throughout the state would be an act purely arbitrary in its nature, as much unsupported by any relation existing between such properties and the districts wherein such properties have no actual situs as would be the giving to the mines of Lawrence county or the flouring mills of the city of Watertown such a situs. There can be no uniformity where the taxes on part of the property is imposed without any regard to local benefits the property is presumed to receive, while the taxes on other property are based solely upon local benefits which are assumed to be the very foundation of the right to tax property. Again, under this theory that the retaining by the state of this special tax is offset by the saving accruing to the several local taxing districts through the lessening of their state tax, and that the amount of the special tax so presumed to be levied on behalf of each local district bears that ratio to the whole local taxes paid into the state treasury as the assessed valuation of the property assessed within such district bears to the value of all the general property of the state— we find this anomalous condition: The property of the railway companies in Wisconsin, and of telephone, telegraph, express, and sleeping car companies in this state, in effect paying local taxes in each taxing district of the state and the amount of such local tax in each district measured not by the value of such property, but by the value of the other property in such district. Under such a system, the greater the amount of other property within a given district, the greater is the portion of the special property which is arbitrarily given a situs within the district; moreover, under such a system, the situs of the property taxed thereunder changes from year to year, not because of any changes that may occur in the actual situs of such property, but solely owing to changes in the proportionate distribution of other property within the state. Any system of taxation based upon any such principles can find no support under a Constitution requiring uniformity in taxation. If the Wisconsin Legislature were attempting to require the railroads to meet a burden equal to that which they would have to meet under a distribution of their assessed valuation among the districts in which they did business followed by levies thereon for local purposes, yet we find such Legislature giving to each railroad a situs throughout the

state, for the purpose of fixing the rate of levy, and, at the same time, limiting the taxes for which it was liable to those imposed for local purposes in those districts only in which the particular company did business. Any law based upon such a theory cannot stand for reasons hereinbefore stated—the rate of levy must be measured by the burdens which the property is to bear.

[21] In providing for the taxing of the property of telegraph, telephone, express, and sleeping car companies, our Legislature copied after the Wisconsin law, except that it has provided for the actual distribution of the taxes collected. The taxes, other than the part belonging to the state, are to be distributed among the various counties wherein the companies are doing business, to be by the county treasurers divided among the county and various local tax funds: In the case of telegraph and telephone companies, "pro rata according to the levy for such purposes made in the proceding year"; in the case of express and sleeping car companies, "according to the levies made upon other property for the preceding year." While the words quoted are far from clear, we take it that the amount of this distribution—whether such distribution be among all the local districts of each county or among those only in which the particular company does business —is, for each local district to which it extends, to be in the same proportion to the whole amount remitted to such county as the taxes levied upon the other property of such district for purposes local to such district bear to the whole amount contributed for the same purpose by all of the local districts of the county to which distribution is made; moreover, we take it that the tax thus distributed to each county is to be divided among the several funds within such county in the exact proportion which such funds already bear to one another. However distributed among the districts of the county, the distribution is based, not upon the value of the special property taxed, but upon the value of the general property situate within such districts. Such provisions of chapter 64 can find no support under our Constitution.

[22] The Wisconsin court, while conceding that the system provided in chapter 64 for taxing railroad property is valid and that it has been approved by the courts of many states, argues that the mileage basis for dividing the assessed valuation for purposes of local taxation is not sound and comes far from reaching

equitable results. With this we cannot agree. This is the system provided for the taxing of the property of railway companies in chapter 64. Under this law that part of the railway unit in this state is assessed as a unit by the commission; such unit is given a situs for taxation purposes in the state and in the several county, school, municipal, and other local taxation districts within whose territory the lines of the company extend; the commission then assesses separately certain parts of the unit which, from their nature, ought fairly to be liable for the tax burdens of the particular districts where they are actually located; such parts are credited to such local districts for the purpose of taxation and all levies are made thereon, on the valuation as assessed, at the same rates as on other property taxable in such districts; after deducting the assessed valuation of those parts of the unit which are separately credited to local districts from the whole assessed valuation of that part of the unit situate within this state, the remainder of such assessed valuation of the unit is divided pro rata, upon a mileage basis, among the several local taxing districts wherein the lines of the particular company extend; and upon such assessed valuation so credited to each district, the same levies are made as are made upon other property in such district.    It is urged that the mileage basis for taxation is inequitable in that some parts of a railway line cost much more to build than other parts.    While this is true, yet each separate mile of any particular line or branch is as essential to the business of the company over such line or branch as is any other mile of such line or branch; and it is clearly within the power of the commission to differentiate between different lines and branches and give to each a greater or less proportionate share of the entire mileage valuation as the facts presented to them may warrant.    That this system of valuing properties, such as those covered by chapter 64, is valid under a Constitution such as ours is too well settled to allow of question at this late date.    Chicago & N. W. R. Co. v. State, supra; State v. Back, 72 Neb. 402, 100 N. W. 953, 69 L. R. A. 447; Ames v. People, 26 Colo. 83, 56 Pac. 656; Adams Exp. Co. v. Ohio State Auditor, supra, and numerous other federal cases therein cited.    An examination of the authorities will disclose that in some states the Legislatures have divided the unit value among the several taxing districts in accordance with the

relative gross earnings of the particular company within the several taxing districts.  Such a basis for division might well be thought to result in a more equitable division especially when applied to some particular kinds of property, particularly properties whose earnings are chiefly local.

[23] We are therefore of the opinion that those provisions of chapter 64, providing for fixing the rate of levy upon defendant's property, providing for the division among the local taxing districts of certain of the taxes collected from defendant's property, and providing for a time for payment of its taxes other than that fixed for payment of other taxes, are all unconstitutional.  Moreover, we cannot believe that the Legislature would have enacted those remaining portions of such act as apply to telegraph, telephone, express, and sleeping car companies without enacting these unconstitutional provisions.  We therefore hold all of chapter 64 to be unconstitutional except such portions thereof as relate to the taxation of properties of railway companies.

Defendant contends that the assessment made by the commission was so wholly unsupported by the facts proven as to be subject to the same condemnation as the assessment considered in State v. New London, etc., 80 Minn. 277, 83 N. W. 339, of which the Minnesota court said:

"We have no doubt that such excessive valuation, in violation of reason, justice, and common sense, would convict the assessment of such lack of the element of judgment as to require interference by the judicial power to correct it."

Owing to the conclusion reached by us upon the constitutionality of chapter 64, an analysis of such assessment becomes unnecessary and would serve no useful purpose.  We do, however, feel that we are justified in announcing that, if the determination of defendant's contention were essential to a determination of this appeal, it would, under the record herein, present a most serious question.  We cannot understand how the total value of defendant's property—as measured by its earnings and the market value of defendant's stock—when divided in accordance with its mileage within this state compared with the total mileage over which its property and earnings are distributed, could warrant the unit value fixed for that portion of the whole property in this state.  Defendant should pay a tax upon a valuation uniform

to that given other property. Upon such valuations it should pay not only future taxes, but taxes for those years for which it has not paid taxes.

[24] Defendant is an unincorporated stock company. It claims that, under the present wording of article 11, § 2, of our Constitution, only the property of corporations can be assessed upon a unit basis. It seems clear to us that the original section was broad enough to admit of assessing property on a unit basis —in fact we believe that, where such an assessment was necessary in order to reach a valuation uniform with that of other property, the Constitution fairly demands such assessment. We do not believe the change made by the amendment of such section in any manner acts as a limitation, based upon ownership, of the properties that can be assessed on a unit basis. We are of the opinion that any property properly taxable as a unit, whether owned by an individual, a partnership, an unincorporated association or a corporation, can be taxed in this state on the unit basis, provided the Legislature has provided the proper machinery therefor.

The judgment of the lower court is reversed, and such court is directed to dismiss the action.

POLLEY, P. J., taking no part in this decision.